285 N.J. Super. 316 (1995)
666 A.2d 1362
NAGUIB GEO SEDAROUS, DECEASED, PLAINTIFF,
v.
NAHED S. SEDAROUS, DEFENDANT-THIRD PARTY PLAINTIFF/APPELLANT,
v.
FOUAD GIRGIS, THIRD PARTY DEFENDANT, AND LYDIA YOUNAN, THIRD PARTY DEFENDANT/RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1995.
Decided November 8, 1995.
*318 Before Judges PRESSLER, KEEFE, and A.A. RODRIGUEZ.
Susan L. Goldring argued the cause for appellant (Ms. Goldring, on the brief).
John T. Ambrosio argued the cause for respondent (Gabriel M. Ambrosio, attorney; John T. Ambrosio, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
N.J.S.A. 2A:34-25, as amended by L. 1988, c. 153, § 7, permits the Family Part to order an obligor spouse to maintain life insurance for the protection of a former spouse or, if the obligor spouse is uninsurable, to create a trust in lieu of life insurance. Jacobitti v. Jacobitti, 135 N.J. 571, 641 A.2d 535 (1994). The issue raised by this appeal is whether the proceeds of group life insurance provided to an obligor spouse under the Federal Employee Group Life Insurance Act (FEGLIA), 5 U.S.C.A. §§ 8701-8716, may be the subject of a state court order pursuant to N.J.S.A. 2A:34-25 or whether FEGLIA preempts any state court action. We hold that FEGLIA does not preempt the power of the state court to impose a constructive trust on the proceeds of the *319 insurance after the death of the obligor spouse. Accordingly, we reverse the order appealed from.
The pertinent facts are not in dispute. Plaintiff Naguib Geo Sedarous and defendant Nahed S. Sedarous were married in 1974. They had no children. From 1982 until his death in 1993, Mr. Sedarous was a civilian employee of the United States Navy. As a result of that employment, he had both the minimum group life insurance afforded him under FEGLIA, about $40,000 in the face amount, plus additional life insurance he was able to purchase under FEGLIA.[1] The total life insurance benefits were about $240,000. Mr. Sedarous had designated his sister, third-party defendant Lydia Younan, as the sole beneficiary of this insurance.
Mr. Sedarous, who suffered from diabetes and other related ailments, instituted this action for divorce in August 1992. Mrs. Sedarous counterclaimed. The matter was tried over two days, and judgment dissolving the marriage was orally pronounced on October 14, 1993, the judge reserving decision on the financial consequences of the divorce. On October 25, 1993, the judge wrote to the attorneys advising them of his financial determinations. Among them was the equitable distribution of Mr. Sedarous's federal pension. The judge accorded Mrs. Sedarous a stated fraction of the monthly pension payments Mr. Sedarous would eventually receive. The judge also directed that at Mrs. Sedarous's election and at her cost, she could obtain federal survivor benefits if the pension plan so permitted, but if not, then Mr. Sedarous would have to maintain a $50,000 life insurance policy for Mrs. Sedarous's benefit. The determinations did not require Mr. Sedarous to maintain life insurance in order to assure the alimony payments that the judge also ordered. Because of this omission, Mrs. Sedarous's attorney requested further argument. On November 19, 1993, before that argument could be *320 entertained and before final judgment was entered, Mr. Sedarous died.
Shortly after Mr. Sedarous's death, Mrs. Sedarous was advised by the Navy not only of the survivor benefits to which she was entitled, amounting to $688 monthly, but also of the actual amount of the FEGLIA insurance. In February 1994, the judgment of divorce was finally entered incorporating, in the main, the provisions of the October 25, 1993, letter except that, because of Mr. Sedarous's intervening death, no alimony was awarded. On the same day the judgment was entered, Mrs. Sedarous, with leave of court, filed a third party complaint against Younan, seeking to impose a constructive trust on the proceeds of the FEGLIA insurance of which Younan was the designated beneficiary. The judge entered an interim order placing $142,000 of the then total $242,000 in Younan's attorney's trust account.
Ultimately, however, the judge granted Younan's motion for summary judgment dismissing the third party complaint. In so doing, the court made clear that had Mr. Sedarous survived at least until the entry of final judgment and had the court been advised of "the true status of the beneficiaries and the FEGLIA issue," it would undoubtedly have ordered Mr. Sedarous to "maintain some separate life insurance to guarantee the alimony." The court noted, however, that even had it done so, its order would have been "an exercise in futility" because of Mr. Sedarous's evident uninsurability. Thus, it concluded, Mrs. Sedarous's sole recourse was to impose a constructive trust on the FEGLIA proceeds, a proposition it would have considered but for the preemption by FEGLIA of state action affecting those proceeds. Mrs. Sedarous appeals the ensuing judgment dismissing her third party complaint.
The specific preemption question before us, while not yet addressed in this jurisdiction, has been considered both by federal and state courts, which have reached disparate results. The starting point of the analysis in these cases, irrespective of the conclusion reached, is the opinion of the United States Supreme *321 Court in Ridgway v. Ridgway, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981). Ridgway construed not FEGLIA but SGLIA, the Serviceman's Group Life Insurance Act of 1965, 38 U.S.C.A. §§ 1965, et seq. (formerly 38 U.S.C.A. §§ 765, et seq.), and concluded that it preempts state action.
In Ridgway, a career army sergeant, Richard Ridgway, was divorced from his first wife by a judgment entered by a Maine court which included the directive that Ridgway maintain all insurance policies on his life for the benefit of the three minor children of the marriage. At the time, the first Mrs. Ridgway was the designated beneficiary of the policy. Shortly after the divorce judgment was entered, Ridgway married the second Mrs. Ridgway and changed the beneficiary designation of his SGLIA insurance in her favor. Ridgway died nine months later. The first Mrs. Ridgway claimed the SGLIA proceeds for the children under the provisions of the divorce judgment, and the second Mrs. Ridgway claimed them as the named beneficiary. Following litigation in the trial court, the Supreme Judicial Court of Maine held that the Supremacy Clause, U.S. Const. art. VI, cl. 2, did not prevent it from imposing a constructive trust on the SGLIA proceeds and so ordered. Ridgway v. Prudential Ins. Co. of America, 419 A.2d 1030 (Me. 1980).
The United States Supreme Court disagreed and reversed. It relied, as a matter of legislative history, on the purpose of SGLIA. SGLIA was enacted in 1965 when the Vietnam hostilities were escalating in order to provide life insurance, partly at government expense, for military personnel on active duty. Previous government insurance programs for the military had expired after the Korean conflict and, as a result of the Vietnam war, the private insurance market was unwilling to make life insurance available to those on active duty. According to the Supreme Court, this fundamental purpose of SGLIA was advanced by (1) a provision mandating payment of the proceeds to the beneficiary designated by the service member and prescribing payment if no designation were made; (2) by an implementing regulation according the *322 service member the unqualified right to designate the beneficiary; and (3) by an anti-attachment provision, adopted five years after original enactment, which unambiguously placed the proceeds that were paid to the beneficiary beyond the reach either of taxing authorities or creditors of the decedent. Ridgway, supra, 454 U.S. at 52-53, 60-61, 102 S.Ct. at 53-54, 57-58, 70 L.Ed.2d at 46, 51. The Court found "the strong language of the anti-attachment provision" dispositive. Id. at 61, 102 S.Ct. at 58, 70 L.Ed.2d at 52. It also concluded that however unpalatable as a matter of conscience and equity, the entire statutory complex, viewed in the light of the federal interest advanced by SGLIA and the extent of public financing of its costs, preempted an order by a state court directing disposition of SGLIA insurance proceeds contrary to the terms of the beneficiary designation. In short, the Court declared that "Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other." Id. at 56, 102 S.Ct. at 55, 70 L.Ed.2d at 48. The states were consequently not at liberty to contravene that directive.
The question, of course, is whether Ridgway controls the preemption question in respect of FEGLIA. In resolving this question, we note at the outset that FEGLIA and SGLIA are not cognate enactments. First, FEGLIA is not attended by the exigency that motivated SGLIA, namely the congressional intention to provide military personnel on active duty with insurance unavailable to them in the private market because of the hazardous nature of their work. FEGLIA provides insurance for all federal employees as an additional job benefit in much the same way as any large private employer provides group life insurance to its employees at shared cost. Second, FEGLIA, in § 8705, includes the same provisions respecting payment or proceeds as SGLIA, and while one of FEGLIA's implementing regulations, 5 C.F.R. § 870.902, accords the same absolute employee right of beneficiary designation, FEGLIA, unlike SGLIA, does not have any anti-attachment provision at all. Finally, FEGLIA, but not *323 SGLIA, includes by 1980 amendment, an express preemption of conflicting state law, 5 U.S.C.A. § 8709(d)(1), providing that
The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.
We are aware that some federal court decisions have held that FEGLIA preempts state action, and have hence concluded that a state family court has no power to vindicate the rights of the children or divorced spouse of a federal employee who flouts a court order requiring him to afford them that insurance protection. Those decisions are based on the perception that FEGLIA's preemption provision or Ridgway or both are dispositive. See Metropolitan Life Ins. Co. v. Christ, 979 F.2d 575 (7th Cir.1992), overruling Rollins v. Metropolitan Life Ins. Co., 863 F.2d 1346 (7th Cir.1988); Dean v. Johnson, 881 F.2d 948 (10th Cir.), cert. denied, 493 U.S. 1011, 110 S.Ct. 574, 107 L.Ed.2d 569 (1989); Mercier v. Mercier, 721 F. Supp. 1124 (D.N.D. 1989); Metropolitan Life Ins. Co. v. McShan, 577 F. Supp. 165 (N.D.Cal. 1983); Knowles v. Metropolitan Life Ins. Co., 514 F. Supp. 515 (N.D.Ga. 1981). See also O'Neal v. Gonzalez, 839 F.2d 1437 (11th Cir.1988) (FEGLIA preempts state court enforcement of federal employee's contract to name his unmarried cohabitant as a 75% beneficiary). One state court has also so held. Metropolitan Life Ins. Co. v. Potter, 533 So.2d 589 (Ala. 1988).
There are, however, three states that disagree with the conclusion that FEGLIA, like SGLIA, preempts the power of a state family court to deal with the insurance proceeds for the purpose of enforcing the decedent's support obligations in a manner contrary to the beneficiary designation. Kidd v. Pritzel, 821 S.W.2d 566 (Mo. Ct. App. 1992); Eonda v. Affinito, 427 Pa.Super. 317, 629 A.2d 119 (1993); Roberts v. Roberts, 560 S.W.2d 438 (Tex.Civ.App. 1977). We find their reasoning persuasive and we agree with their conclusion.
*324 We begin with the proposition that under our federal system, laws affecting marital and parental relationships and the consequences of those relationships are matters ordinarily left to the states, not the federal government. As reiterated by the Supreme Court in Rose v. Rose, 481 U.S. 619, 625, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599, 607 (1987), quoting In re Burrus, 136 U.S. 586, 593-594, 10 S.Ct. 850, 852-853, 34 L.Ed. 500, 503 (1890), "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." We consider the test for determining federal preemption in light of this articulated deference to the paramount state interest in its family law.
The preemption test has been most recently prescribed by the Supreme Court in Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). The Court there again explained that state law is not preempted by federal law unless it is the "clear and manifest purpose of Congress" to effect preemption, a purpose that can be demonstrated by the express language of the federal enactment or its structure and purpose, or by a direct conflict between the terms of the federal and state enactments, or by a showing that federal law occupies the field so completely as to justify the inference that state legislation addressing that subject is precluded. 505 U.S. at 515-516, 112 S.Ct. at 2617, 120 L.Ed.2d at 422-423. Moreover, and to the point here, the inclusion of an express preemption clause does not end the inquiry. Rather, the clause must itself be construed to determine just what it does preempt, and matters beyond the preemptive reach are then presumed not to be preempted, provided, of course, that the field is not occupied and that there is no direct conflict with federal law. 505 U.S. at 517-519, 112 S.Ct. at 2618, 120 L.Ed.2d at 423. The first issue, then, is whether the preemption provision of 5 U.S.C.A. § 8709(d)(1), either alone or considered in light of Ridgway, precludes state imposition of a constructive trust on FEGLIA proceeds after their payment to the named beneficiary.
*325 We conclude that (d)(1) does not have that preemptive effect. We rely first on the text of that provision. What is protected against state action is not the disposition of proceeds once paid out but rather only the terms of the group life insurance contract relating to extent of coverage and benefits, including initial benefit payment. Moreover, the contrary state action enjoined by (d)(1) is narrowly, not broadly, defined. Thus the expressly interdicted state action is limited to laws and implementing regulations "which relate to group life insurance...." We think it plain that an order of the Family Part, based on equitable principles and implementing the state statutory mandate for the economic protection of a divorced obligee spouse and the children of the obligor spouse, does not come within the prescription of state laws and regulations relating to group life insurance. In our view, therefore, the express focus of the interdicted action is the insurance law of a state, not its family law. In sum, we are satisfied that the preemptive clause need not be read any more broadly than is necessary to protect and promote the essential purpose and policy of FEGLIA itself and that such a reading does not preclude a state's imposition of a constructive trust on the proceeds when paid.
We rely secondly on the Congressional purposes underlying FEGLIA. As we have pointed out, the purpose of SGLIA was to provide active duty military personnel with life insurance not available to them in the private market. FEGLIA's purpose is different  it is merely to provide government workers, who are in any event able to purchase life insurance in the private market, with the same job benefits available to employees in the private sector. In this regard, the court in Kidd v. Pritzel, supra, 821 S.W.2d at 568, noted that FEGLIA had been initially proposed by President Eisenhower in a 1954 message to Congress for two reasons: first, it would allow federal employees more readily to fulfill their responsibilities to their families, and second, it would enable the federal government to offer benefits consistent with the private sector. President Eisenhower explained that group life *326 insurance was an "essential element in the development of a comprehensive personnel program that applies to Government service the best practices of progressive, private employers." 1954 U.S.Code Cong. & Admin.News, vol. 2 at 3056. Kidd further points out, and we concur, that the primary purpose of § 8705, which prescribes the order of precedence for payments of proceeds, and of the implementing regulation, which affords employees an absolute right of beneficiary designation, was to ensure the ease, certainty, and speed of the government's administration of the program. Thus
section 8705 serves a valuable and worthwhile purpose [without preemption] by keeping the OPM [Office of Personnel Management] and the insurance company out of legal entanglements. It fulfills the congressional intention by reducing their administrative and legal hassles. Regardless of what claims are brought to recover the proceeds once they are paid out to the designated beneficiary, the purpose of § 8705 has been served. Neither the insurance carrier nor the government can be burdened by participation in a state judicial proceeding to recover the proceeds. Nor will they be saddled with the unpleasant and cumbersome task of interpreting state statutes, divorce decrees, property settlement agreements or wills. Under § 8705 the insurer may simply pay the policy proceeds quickly and directly to the named beneficiary and be done with it. If the insured fails to designate a beneficiary, the statute provides direction to determine the person to pay.
[Id. at 572]
Therefore, Kidd concluded, there is nothing in the text or purpose of § 8705 barring "equitable claims and equitable claims do not render § 8705 meaningless." Ibid. That, of course, is what we perceive to be the point, namely, that while § 8705 itself and its implementing beneficiary-designation regulation fall within the preemptive reach of § 8709(d)(1), § 8709(d)(1) does not preclude imposition of a constructive trust on the proceeds because § 8705 and the regulation do not, and there is nothing else in FEGLIA that arguably could.
Since we are satisfied that FEGLIA's preemption clause does not reach a state's power to impose a constructive trust on the proceeds, we consider next the other two prongs of Cipollone, namely, the test of a direct conflict between state and federal law and the test of total occupation of the field by Congress. For the reasons we have already stated, we are satisfied that neither *327 yields a preemption conclusion. There is no direct conflict. And while Congress has surely occupied the field of federal employee group insurance up to the point of payment of proceeds, FEGLIA, in our view, does not reach beyond that point.
Finally, we are persuaded that Ridgway does not require a preemption result. We have already addressed the fundamental differences in the purposes of FEGLIA and SGLIA. Those differences suggest that the federal interest in SGLIA is of a different and higher order than its interest in FEGLIA. Beyond that, we agree with the observation of Kidd that Ridgway relied primarily on SGLIA's anti-attachment provision in concluding that court-ordered support obligations were not exempt from the order-of-precedence and beneficiary-designation provisions of that statute. That broadly formulated anti-attachment provision may well be preclusive. But FEGLIA does not have any anti-attachment provision. Considering then on one side of the balance the administrative convenience that is at the heart of § 8705 of FEGLIA and of its implementing regulation and, on the other side of the balance, the intensity and pervasiveness of the state interest in the financial protection of the dependents of the divorced obligor spouse, we are confident that FEGLIA's lack of an anti-attachment provision is the critical factor justifying, if not indeed compelling, the conclusion that Ridgway does not govern the FEGLIA preemption issue. Clearly, if Congress had intended the same immunity of proceeds from state court action in FEGLIA as it provided for in SGLIA, it could easily have done so by the simple expedient of including SGLIA's anti-attachment provision in FEGLIA. The fact that it did not militates strongly against both a preemption conclusion and a mandatory extension of Ridgway to FEGLIA problems.
For these reasons, we hold that federal law does not preclude the Family Part of the New Jersey Superior Court from imposing a constructive trust on FEGLIA proceeds in the same manner as if the insurance in question had been privately contracted for.
*328 Accordingly, we reverse the order appealed from and remand to the trial court for its reconsideration of the plaintiff's constructive trust application on its merits.
NOTES
[1] At trial, Mr. Sedarous failed to disclose his purchase of additional federal employee insurance, asserting that the face value of his FEGLIA participation was either $40,000 or $80,000.