676 A.2d 190

IN THE MATTER OF THE ESTATE OF PETER
NICHOLAS LANKEN, DECEASED.

Superior Court of New Jersey
Chancery Division Probate Part
Essex County

February 9, 1996.

*Francis X. Ounan* for plaintiff, Paul N. Lanken, Administrator (*Pelio & Ounan,* attorneys).

*Kimberly E. Robertson* for defendant, General Electric Company Pension Plan (*Apruzzese, McDermott, Mastro & Murphy,* attorneys).

HIGGINS CASS, J.S.C.

This matter came before me by way of an order to show cause and verified complaint filed by plaintiff Paul N. Lanken, administrator of the estate of Peter Nicholas Lanken. Plaintiff seeks a judgment that the proceeds of Mr. Lanken's tax-qualified pension

plan administered by the General Electric Company Pension Plan (GE) be paid to his estate. GE has filed a third party complaint demanding indemnification from Rachel Lanken, decedent's ex-wife, for all sums found due against it and in favor of the estate of Lanken.

On February 15, 1978, Peter Lanken designated his wife Rachel the beneficiary of his pension plan. The plan provided that a designated beneficiary could be changed at any time by filing written notice of the change with the pension board. Mr. Lanken divorced his wife on February 9, 1979 and left the employ of GE on June 29, 1979. In the judgment of divorce Rachel Lanken withdrew her "demand for support, equitable distribution, and attorneys fees." However, Mr. Lanken failed to change the designated beneficiary of his pension assets and never informed GE of his divorce. He died on December 30, 1993.

On October 24, 1994, GE was notified of the divorce by a representative of the estate and a demand was made for the pension proceeds. However, on June 23, 1995, GE disbursed the pension benefits to the named beneficiary, Rachel Lanken. The issue before the court is whether the general language of waiver contained in the judgment of divorce will serve as a disclaimer of Rachel Lanken's interest in her former husband's pension proceeds.

## I.

The Employee Retirement Income Security Act of 1974 (ERISA), 29 *U.S.C.A.* §§ 1001–1461, governs the determination of whether decedent's ex-wife may waive her interest in his tax-qualified pension plan. *See* 29 *U.S.C.A.* §§ 1144(a), 1002(3). The preemption provision of ERISA, 29 *U.S.C.A.* § 1144(a), provides that:

> the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

This provision was deliberately crafted in an expansive manner, and it has been construed broadly. *Pilot Life Ins. Co. v. Dedeaux*, 481 *U.S.* 41, 47, 107 *S.Ct.* 1549, 1552–53, 95 *L.Ed.*2d 39, 48 (1987); *Shaw v. Delta Air Lines, Inc.*, 463 *U.S.* 85, 96–97, 103 *S.Ct.* 2890, 2899–900, 77 *L.Ed.*2d 490, 500–01 (1983).

State laws relating to any ERISA plan are preempted unless they fall into the "saving" clause which exempts from preemption state laws which regulate insurance, banking, or securities. 29 *U.S.C.A.* § 1144(b)(2)(A). The "saving" clause, however, is restricted by the "deemer" clause, which "essentially dictates that states may not treat self-insured ERISA plans as insurers in order to subject them to state insurance regulation." *Metropolitan Life Ins. Co. v. Hanslip*, 939 *F.*2d 904, 906 (10th Cir.1991); 29 *U.S.C.A.* § 1144(b)(2)(B).

Congress intended that courts would develop federal common law when interpreting ERISA. *Amato v. Bernard*, 618 *F.*2d 559, 567 (9th Cir.1980). Thus, once it has been determined that a plan is governed by ERISA, where the statute is silent on an issue, federal common law applies. *Krishna v. Colgate Palmolive Co.*, 7 *F.*3d 11, 14 (2nd Cir.1993); *Nachwalter v. Christie*, 805 *F.*2d 956, 959–60 (11th Cir.1986). If there is no clearly established federal common law on point, courts may draw guidance from analogous state common law. *Id.* However, if a state's common law is inconsistent with the policies behind the federal statute, it may not be considered in interpreting that statute. *Id.*

## II.

Section 1056(d) of ERISA specifically governs the pension plan in question. This section requires that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 *U.S.C.A.* § 1056(d)(1). The anti-alienation provision of ERISA applies only to pension plans and will not apply to a life insurance plan which is a "welfare plan" under 29 *U.S.C.A.* § 1002(1)(A). *Brandon v. Travelers Ins. Co.*, 18 *F.*3d 1321, 1324 (5th Cir.1994).

The Retirement Equity Act of 1984 (REA), *Pub.L. No.* 98–397, 98 *Stat.* 1426, passed to protect women who are dependent upon the earnings of their husbands in the event of death or divorce, created an exception to the anti-alienation provision of ERISA. 29 *U.S.C.A.* § 1056(d)(3)(A); *Ablamis v. Roper*, 937 *F*.2d 1450, 1453 (9th Cir.1991). This exception provides that pension plan benefits may be assigned or alienated pursuant to a qualified domestic relations order (QDRO). 29 *U.S.C.A.* § 1056(d)(3). However, this law was not in effect at the time of the decedent's divorce, nor did Rachel Lanken ever obtain such order, after its enactment.

■ The question of whether Rachel Lanken waived her rights as the beneficiary of the GE pension plan first depends upon whether ERISA's anti-alienation provision applies to the beneficiaries of pension plans. In this case, GE argues that section 1056(d)(1) provides an absolute bar to the alienation of pension benefits by both the plan participant and the beneficiary. The administrator of the estate contends that ERISA's anti-alienation provision applies only to plan participants and not beneficiaries.

A number of cases in both federal and other state courts have dealt with this question. In *Fox Valley & Vicinity Constr. Wkrs. Pension Fund v. Brown*, 897 *F*.2d 275, 279 (7th Cir.(1990)) (en banc), *cert. denied*, 498 *U.S.* 820, 111 *S.Ct.* 67, 112 *L.Ed.*2d 41 (1990), the court found that ERISA's anti-alienation provision applied only to plan participants. It determined that the legislative history of ERISA indicates that the statute's spendthrift provision has been designed "to 'ensure that the employee's accrued benefits are actually available for retirement purposes,' by preventing unwise assignment or alienation." *Id.* (quoting *H.R.Rep. No.* 807, 93d *Cong.*, 2d *Sess.* (1974), *reprinted in* 1974 *U.S.Code Cong. & Admin.News* 4639, 4670, 4734). The court concluded that this justification had nothing to do with the plan beneficiary and existed solely to protect the plan participant. *Id.* Thus, it found, the anti-alienation provision of ERISA did not

apply to plan beneficiaries and a plan beneficiary could, therefore, waive his or her interest in a pension benefit. *Id.*

By contrast, in *Ablamis v. Roper, supra,* 937 *F.*2d at 1454, the court took a more expansive view of the anti-alienation provision. In this case, the court determined that a wife who died while her husband was still living could not leave half of his pension benefits to a third party in her will. *Id.* at 1460. It noted that in the absence of an exception, "a surviving spouse may not alienate her own survivor's benefits during her lifetime, let alone a portion of her husband's during his." *Id.* at 1454.

In so ruling, the court took guidance from the United States Supreme Court decision in *Guidry v. Sheet Metal Workers National Pension Fund,* 493 *U.S.* 365, 110 *S.Ct.* 680, 107 *L.Ed.*2d 782 (1990). In *Guidry,* the Court noted that "[a]s a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by statutory text." *Guidry, supra,* 493 *U.S.* at 376, 110 *S.Ct.* at 687, 107 *L.Ed.*2d at 795. In this regard, it found that "the identification of any exception should be left to Congress." *Id.*

I conclude that the anti-alienation provision of ERISA applies to beneficiaries as well as plan participants. Section 1056(d)(1) is absolute in its language, and there is no reason to exempt beneficiaries from this broad statutory mandate. To do so would confuse ERISA's statutory scheme.[1] Thus, I hold that Rachel Lanken did not effectively disclaim her interest in her ex-hus-

---

[1] An examination of section 1056(d) in its entirety provides further insight on the interpretation of the anti-alienation provision of ERISA. Section 1056(d)(2), which contains an exception to ERISA's anti-alienation provision for "any voluntary or revokable assignment of not to exceed 10 percent of any benefit payment, or of any irrevocable assignment or alienation of benefits executed before September 2, 1974," states that "[f]or purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued nonforfeitable benefit." 29 *U.S.C.A.* § 1056(d)(2). The reference to alienation or assignment by a beneficiary would be unnecessary if the anti-alienation clause applied only to participants.

band's pension plan by her general waiver in the judgment of divorce.

## III.

█ Even if I were to conclude that plan beneficiaries may alienate or assign their rights, I would still find Rachel Lanken's waiver insufficient to disclaim her interest in the pension plan proceeds. In situations where no specific provision of ERISA addresses questions relating to employee benefit plans, federal common law controls. *Fox Valley, supra,* 897 *F.*2d at 281; *McMillan v. Parrott* 913 *F.*2d 310, 312 (6th Cir.1990). In those cases where courts found that the anti-alienation provision did not apply to beneficiaries, nevertheless, they clearly required a specific waiver in order to effect the disclaimer of rights by a named beneficiary. *Fox Valley, supra,* 897 *F.*2d at 281; *Lyman Lumber Co. v. Hill,* 877 *F.*2d 692, 693 (8th Cir.1989). I find that Rachel Lanken's withdrawal of her "demand for support, equitable distribution, and attorneys fees" is a general waiver, and as such, it is insufficient to disclaim her interest as the named beneficiary of the pension plan.

## IV.

The administrator argues that I should look to state law and follow *Vasconi v. Guardian Life Insurance Co.,* 124 *N.J.* 338, 590 *A.*2d 1161 (1991), in making my determination. The *Vasconi* case is inapplicable to the case at hand. In that case, the New Jersey Supreme Court held that a general waiver of all claims or obligations arising from the marriage in a property settlement provision pursuant to a divorce presumptively revokes a beneficiary's interest in life insurance proceeds. *Id.* at 346, 590 *A.*2d 1161. The relevant plan in *Vasconi* was a group life insurance policy, not

an ERISA pension plan. *Id.* at 340, 590 *A.2d* 1161. Unlike *Vasconi,* in the present case ERISA and federal law controls.[2]

---

[2] The preemption provision in ERISA is very similar to the preemption provision of the Federal Employee Group Life Insurance Act (FEGLIA), 5 *U.S.C.A.* §§ 8701–16, which was recently construed by the New Jersey Superior Court, Appellate Division, in *Sedarous v. Sedarous,* 285 *N.J.Super.* 316, 323, 666 *A.2d* 1362 (App.Div.1995). FEGLIA preempts "any law of any State ... which relates to group life insurance." 5 *U.S.C.A.* § 8709(d)(1). The court found that "what is protected against state action is not the disposition of proceeds once paid out but rather only the terms of the group life insurance contract relating to the extent of coverage and benefits, including the initial benefit payment." *Sedarous, supra,* 285 *N.J.Super.* at 325, 666 A.2d 1362. Thus, the court held that a state may impose a constructive trust on the proceeds when paid. *Id.*