## CIRCUIT COURT OF FAIRFAX COUNTY

Jacqueline Hillman

v.

Judy A. Maretta

June 25, 2010

Case No. CL 2009-15137

BY JUDGE MICHAEL F. DEVINE

Plaintiff Jacqueline Hillman and Defendant Judy A. Maretta came before the Court on May 7, 2010, on Ms. Maretta's Plea in Bar/Demurrer. The federal preemption issue presented by Ms. Maretta's motion is a matter of first impression in Virginia. After conducting the hearing on the motion, the Court took the matter under advisement.

In her motion, Ms. Maretta argues that the statutory "order of precedence" set forth in the Federal Employees' Group Life Insurance Act ("FEGLIA") preempts the constructive trust remedy provided by Virginia Code § 20-111.1(D), under which Ms. Hillman brought the instant cause of action. Under the FEGLIA order of precedence, policy proceeds are to be paid first to the designated beneficiary of the policy, and then to the widow if there is no designated beneficiary. The parties agree that Ms. Maretta is the proper beneficiary under FEGLIA, and that FEGLIA preempts Code § 20-111.1(A), which would have revoked the beneficiary designation of Ms. Maretta upon the entry of the divorce decree between Mr. Hillman and Ms. Maretta. The issue, then, is whether FEGLIA also preempts subsection (D) of that statute, which imposes a constructive trust on death benefit proceeds when subsection (A) is preempted, making a

former spouse personally liable for the amount of the payment "to the person who would have been entitled to it" were subsection (A) not preempted. After full consideration of the pleadings, the *ore tenus* arguments, and the applicable governing authorities, the Court now holds that Virginia Code § 20-111.1(D) is not preempted by FEGLIA for the reasons set forth herein.

## Background

The facts herein, which are laid out for the purpose of the instant motion only, are based on the undisputed facts contained in the parties' memoranda in support of or in opposition to Ms. Maretta's motion.

On December 2, 1996, William Hillman designated Ms. Maretta, his wife at the time, as the beneficiary of his Federal Employees' Group Life Insurance ("FEGLI") policy. Although Mr. Hillman and Ms. Maretta divorced on December 29, 1998, and Mr. Hillman married Ms. Hillman on October 11, 2002, Mr. Hillman did not change the beneficiary designation of his FEGLI policy. Mr. Hillman died unexpectedly on July 28, 2008, while still married to Ms. Hillman.

In October 2008, after Ms. Hillman unsuccessfully filed a claim under Mr. Hillman's FEGLI policy, Ms. Maretta filed a claim for the death benefit and received proceeds in the amount of approximately $124,558.03. On October 22, 2009, Ms. Hillman filed the instant Complaint, alleging that she was entitled to the FEGLI proceeds pursuant to Virginia Code § 20-111.1(D), which would impose a constructive trust on the FEGLI proceeds by making Ms. Maretta personally liable to Ms. Hillman for the full amount of the benefit.

## Analysis

### A. *Standard of Review*

A demurrer tests the legal sufficiency of a pleading and should be sustained if the pleading, considered in the light most favorable to the plaintiff, fails to state a valid cause of action. Va. Code Ann. § 8.01-273; *Welding, Inc. v. Bland County Serv. Auth.*, 261 Va. 218, 226, 541 S.E.2d 909, 914 (2001). Similarly, a plea in bar is a defensive tool which shortens litigation by reducing it to a distinct issue of fact which, if proven, results in a bar to the Plaintiff's recovery. *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996). In this case, there are no issues of material

fact for the Court to determine; the sole issue, which may be brought before the Court on either a demurrer or plea in bar, is whether the Virginia statute upon which Ms. Hillman's claim rests is preempted.

B. *The Applicable Language of FEGLIA and Virginia Code § 20-111.1*

FEGLIA § 8705, known as the statutory order of precedence, provides:

> Except as provided in subsection (e), the amount of group life insurance and group accidental death insurance in force on an employee at the date of his death *shall be paid*, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
>
> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office. . . .
>
> Second, if there is no designated beneficiary, to the widow or widower of the employee. . . .

5 U.S.C. § 8705 (emphasis added). In enacting FEGLIA, Congress expressly provided for the preemption of state laws regulating the extent of coverage or benefits that are inconsistent with FEGLIA in a preemption provision as follows:

> The provisions of any contract under [FEGLIA] which relate to the nature or extent of coverage or benefits (including *payments with respect to benefits) shall supersede and preempt any law* of any State or political subdivision thereof, or any regulation issued thereunder, *which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.*

5 U.S.C. § 8709(d)(1) (emphasis added).

As previously stated, the parties agree that FEGLIA preempts Virginia Code § 20-111.1(A), which provides:

> Upon the entry of a [divorce] decree ... any revocable beneficiary designation contained in a then existing written

contract owned by one party that provides for the payment of any death benefit to the other party is revoked. A death benefit prevented from passing to a former spouse by this section shall be·paid as if the former spouse had predeceased the decedent.

Va. Code § 20-111.1(A). The parties agree that this subsection is preempted because, by revoking the beneficiary designation, the statute directly conflicts with FEGLIA's requirements that plans be administered, and benefits be paid, in accordance with FEGLI plan documents. Further, subsection (A) may provide for the distribution of proceeds to someone other than the designated beneficiary, and the FEGLIA order of precedence expressly provides that proceeds "shall be paid" to the designated beneficiary if there is one. The issue, then, is whether FEGLIA also preempts Subsection (D) of that statute, which provides:

If this section is preempted by federal law with respect to the payment of any death benefit, a former spouse who, not for value, receives the payment of any death benefit that the former spouse is not entitled to under this section *is personally liable for the amount of the payment to the person who would have been entitled to it were this section not preempted.*

Va. Code § 20-111.1(D) (emphasis added).

C. *Federal Preemption of State Law*

The Supremacy Clause of the United States Constitution makes "the Laws of the United States ... the supreme law of the Land ... anything in the Constitution or Law of any State to the Contrary notwithstanding." U.S. Const, art. VI, cl. 2. Under the doctrine of federal preemption of conflicting state law, which is derived from the Supremacy Clause, federal preemption may be express or implied, and occurs in three situations. *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S. Ct. 2374, 120 L. Ed. 2d 73 (1992). First, Congress may expressly define the extent to which a federal statute preempts state law ("express preemption"). *E.g., Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992). Second, preemption is implied when a pervasive scheme of federal regulation makes it reasonable

to infer that Congress intended exclusive federal regulation of the field ("field preemption"). *English v. General Elec. Co.*, 496 U.S. 72, 79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990). Third, preemption is also implied where state law actually conflicts with federal law, such that either (a) compliance with both state and federal law is impossible; or (b) the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress ("conflict preemption"). *Gade*, 505 U.S. at 98. The "ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole." *Id.*

With respect to domestic relations law, the Supreme Court of the United States has said that "state interests ... in the field of family and family-property arrangements ... should be overridden ... only where clear and substantial interests of the National Government ... will suffer major damage if the state law is applied." *United States v. Yazell*, 382 U.S. 341, 352, 86 S. Ct. 500, 15 L. Ed. 2d 404 (1966). "The pertinent questions are [1] whether the right as asserted conflicts with the express terms of federal law and [2] whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 583, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979). Thus, while this Court's "ultimate task ... is to determine whether [Virginia Code § 20-111.1(D)] is consistent with the structure and purpose of [FEGLIA] as a whole," *Gade*, 505 U.S. at 98, this Court will only find that FEGLIA preempts this domestic relations law if (1) Ms. Hillman's rights as asserted "conflicts with the express terms" of FEGLIA or (2) the Virginia statute's "consequences sufficiently injure" FEGLI objectives to require preemption. *Hisquierdo*, 439 U.S. at 583. Keeping these preemption maxims in mind, this Opinion Letter first discusses *Ridgway v. Ridgway*, 454 U.S. 46, 102 S. Ct. 49, 70 L. Ed. 2d 39 (1981), and *Dugan v. Childers*, 261 Va. 3, 539 S.E.2d 723 (2001), as Ms. Maretta argues that the rationale underlying those cases governs the preemption issue in this case. This Opinion Letter then examines persuasive authority on the FEGLIA preemption issue and applies each of the three federal preemption tests to Va. Code § 20-111.1(D).

### 1. *Ridgway v. Ridgway*

In *Ridgway*, a United States Army Sergeant had designated that his life insurance proceeds be paid as specified by law, despite a state court divorce decree obligating him to maintain life insurance for the benefit of

his children. *Ridgway*, 454 U.S. at 48-49. The Supreme Court of the United States held that the federal law at issue, the Servicemembers' Group Life Insurance Act ("SGLIA"), preempted the state court decree obligation, and thus applied the federal statutory prescription for distribution of the proceeds. *Id.* at 63. The Court concluded that Congress, in enacting SGLIA, "spoke[] with force and clarity in directing that the proceeds belong to the named beneficiary and no other." *Id.* at 56, 59-60 ("[f]ederal law and federal regulations bestow upon the service member an *absolute right to designate* the policy beneficiary. That right is personal to the member alone.") (emphasis added).

In a separate section of its decision, the Court also held that the "imposition of a constructive trust upon the insurance proceeds is also inconsistent with the anti-attachment provision" in SGLIA. *Id.* at 57. That provision shields SGLIA payments "from taxation" and from "claims of creditors," and states that the payments "shall not be liable to attachment, levy, or seizure by or under *any legal or equitable process whatever*, either before *or after* receipt by the beneficiary." 38 U.S.C. § 770(g) (emphasis added). The Court emphasized "the unqualified sweep" of § 770(g), which prohibits, "in the broadest of terms," *any* attachment by *any* legal *or* equitable process *whatever*. *Ridgway*, 454 U.S. at 60-61 (rejecting the lower court's attempt to limit the reach of § 770(g) on the theory that the purpose of the anti-attachment provision was to protect the policy proceeds from the claims of creditors, and not from minor children asserting equitable interests). In addition, the Court noted that the anti-attachment provision "prevents the vagaries of state law from disrupting ... congressional policy." *Id.* at 61. Earlier in the decision, the Court explained Congress' intent in enacting SGLIA as follows:

> Possession of government insurance, payable to the relative of his choice, might well directly enhance the morale of the serviceman. The exemption provision is his guarantee of the complete and full performance of the contract to the exclusion of conflicting claims. The end is a legitimate one within the congressional powers over national defense, and the means are adapted to the chosen end.

*Id.* at 56-57 (quoting *Wissner v. Wissner*, 338 U.S. 655, 660-61, 70 S. Ct. 398, 94 L. Ed. 424 (1950)).

In sum, the Court's decision in *Ridgway* consists of two holdings: (1) the state divorce decree, by requiring the servicemember to maintain

his children as the designees of his SGLIA policy, conflicts with the express terms of SGLIA and injures federal objectives by interfering with the servicemember's "absolute right to designate the policy beneficiary"; and (2) the imposition of a constructive trust conflicts with the express and broad terms of § 770(g), which shields SGLIA policy proceeds from all state equitable remedies. Thus, the Court did *not*, as Ms. Maretta contends, hold that imposition of a constructive trust conflicted with the terms of SGLIA governing beneficiary designations; rather, the equitable remedy conflicted with the broad anti-attachment provision in SGLIA.

Unlike the *Ridgway* divorce decree, which *required that* the decedent maintain his children as his SGLIA beneficiaries, Virginia Code § 20-111.1 did not require that Mr. Hillman designate or maintain any particular individual(s) as his FEGLI beneficiary. Therefore, *Ridgway's* first holding is distinguishable on its facts. Moreover, as FEGLIA does not contain any anti-attachment provision, *Ridgway's* second holding is also distinguishable on its facts. Given these two differences, as well as the disparities of congressional intent in enacting SGLIA versus FEGLIA, the Court finds that the Supreme Court's rationale in *Ridgway* does not govern the present FEGLIA preemption issue. This memorandum discusses congressional intent in enacting FEGLIA under Section D of the Analysis.

### 2. *Dugan v. Childers*

In *Dugan*, the Supreme Court of Virginia found that the federal law governing a military retiree's Survivor Benefit Plan ("SBP law") preempted a conflicting Virginia divorce decree that required the husband to assign his ex-wife half of his retirement benefits. *Dugan*, 261 Va. at 8, 539 S.E.2d at 725. The SBP law provides express procedures through which a former spouse may receive SBP annuity benefits, namely, the retiree is deemed to make the election to provide the annuity if the secretary of the appropriate branch of the military service receives from the former spouse a written request, together with a copy of the court order, that such an election be deemed to have been made. 10 U.S.C. §§ 1450(f)(3)(A)(i)-(ii). Further, such request must be received by "the Secretary concerned" within one year of the date of the court order. *Id.* § 1450(f)(3)(C).

In finding preemption, the Court emphasized three points. First:

In providing the means by which former spouses may become entitled to SBP annuity benefits, Congress enacted

plain and precise statutory language placing conditions and limits on that right and made clear that any annuity benefits paid in compliance with the provisions of the SBP are not subject to legal process. . . .

When a special limitation is part of the statute creating the substantive right, the limitation is not merely a procedural requirement, but a part of the newly created substantive cause of action. The special limitation is a condition precedent to maintaining the claim and failure to comply with it bars the claim.

*Dugan* at 8-9, 539 S.E.2d at 725-26 (quotations omitted). In other words, the SBP law created the sole procedural and substantive means through which a former spouse may be entitled to a military retiree's SBP annuity payments. The plaintiff's failure to comply with such procedures thus barred her equitable claim.

Second, the SBP law contains an anti-alienation provision that provides that "an annuity under [the SBP law] is not assignable or subject to execution, levy, attachment, garnishment, *or other legal process*" 10 U.S.C. § 1450(i) (emphasis added). In finding that this non-alienation provision "would be sufficient alone to require a finding of preemption," the Court held that "the term 'other legal process' ... encompasses the imposition of a constructive trust upon annuity benefits. *Dugan* at 10, 539 S.E.2d at 726. Therefore, as in *Ridgway*, there was an anti-alienation provision that explicitly prevented the former spouse from using any legal process in an attempt to reach the military retiree's SBP benefits.

Third, the Court found that:

"[T]he consequences of enforcing the conflicting state law principles sufficiently injures the objectives of the SBP so that federal law preempts the authority of state law" ... [t]o award [the former spouse] the survivor's benefits she seeks would seriously conflict with and effectively cancel both the "plain and precise" one-year limitation Congress placed on a former spouse's right to claim the benefits and the clear prohibition against subjecting an annuity to legal process.

*Id.* (quoting *King v. King*, 225 Ga. App. 298, 483 S.E.2d 379, 383 (1997)). The Court thus found that the Virginia divorce decree, which would effectively negate this federal one-year limitation, was appropriately

overridden by the SBP law because clear and substantial federal interests would "suffer major damage if the state law [were] applied." *Id*. at 8, 539 S.E.2d at 725 (quoting *Yazell*, 382 U.S. at 352).

The facts and federal law at issue in the instant case are easily distinguishable on all three of these points. First, FEGLIA does not create a substantive cause of action through which Ms. Hillman could collect Mr. Hillman's FEGLI proceeds. Second, as noted above, FEGLIA does not contain any anti-alienation or similar provision that precludes the imposition of a constructive trust upon FEGLI proceeds. Third, if Ms. Hillman were to be able to reach the FEGLI proceeds, her actions would not be in direct contravention of any "plain and precise" requirement or "clear prohibition" expressly provided for in FEGLIA. The Court thus finds that the Supreme Court of Virginia's rationale in *Dugan* does not govern this case either.

### 3. FEGLIA Preemption of Foreign State Equitable Remedies

While there is no binding authority with respect to FEGLIA preemption of Virginia law, there are a number of foreign state and federal courts that have encountered the FEGLIA preemption issue. Ms. Maretta cites a number of federal decisions that she claims stand for the proposition that FEGLIA preempts state laws providing for constructive trusts and other equitable remedies. In each of these federal cases, however, the plaintiffs asserted their entitlement to the decedent's FEGLI proceeds through a divorce decree or separation agreement that *required* the insured to maintain his or her FEGLI policy for their benefit. These courts, employing the *Ridgway* rationale, held that the divorce decrees at issue directly conflicted with the FEGLIA provision granting an insured the absolute right to designate any beneficiary that he or she chooses. *Metropolitan Life Ins. Co. v. Zaldivar*, 413 F.3d 119, 120 (1st Cir. 2005) (holding that FEGLIA preempted a state divorce decree which ordered the insured to maintain his FEGLI policy for the benefit of his children from his first marriage); *Metropolitan Life Ins. Co. v. Christ*, 979 F.2d 575, 579-80 (7th Cir. 1992) (holding that FEGLIA preempted a divorce decree that ordered the insured to designate his children as beneficiaries on his FEGLI policy); *Metropolitan Life Ins. Co. v. Armstrong-Lofton*, 19 F. Supp. 2d 1134, 1137 (C.D. Cal. 1998) (holding that, to the extent that California community property law gave the insured's former spouses or his daughter an interest in his FEGLI benefits, it conflicted with FEGLIA's order of precedence); *Metropolitan Life Ins. Co. v. Pearson*, 6 F. Supp. 2d 469, 471

(D. Md. 1998) (holding that the asserted right of the insured's child, based on his agreement with his mother during their divorce to name the child as his FEGLI beneficiary, was preempted by FEGLIA); *Metropolitan Life Ins. Co. v. Bell*, 924 F. Supp. 63, 65 (E.D. Tex. 1995) (finding FEGLIA preemption of a state divorce decree that designated the decedent's FEGLI policy as community property and then awarded the former spouse one-half of the proceeds).

Some of these federal decisions further held that the plaintiff's constructive trust claims injured the express objectives of another FEGLIA provision that allowed a divorce decree to govern a FEGLI beneficiary designation *if* the insured or the beneficiary provides a copy of the divorce decree to the employing agency *before* the insured's death. 5 U.S.C. § 8705(e) (providing that FEGLI proceeds "shall be paid ... to another person ... if and to the extent expressly provided for in the terms of any court decree of divorce ... [if] it is received, before the date of the covered employee's death, by the employing agency"). Similar to the provision regarding annuities for SBP benefits in *Dugan*, courts have held that this FEGLIA provision directly conflicts with state laws providing that beneficiary designations in state divorce decrees may be enforced through a constructive trust in lieu of the procedures expressly set forth in FEGLIA. *Zaldivar*, 413 F.3d at 120 (finding conflict preemption under this FEGLIA provision, as the divorce decree was not sent to the employing agency before the insured's death). The proposition, based on the foregoing federal authorities, that FEGLIA preempts *all* state laws that impose constructive trusts and other equitable remedies is therefore inaccurate given that these federal cases all involved divorce decrees that *mandated* that the insured designate a particular beneficiary. Furthermore, any state equitable remedy designed to enforce the divorce decrees in those cases was in direct contravention of the express FEGLIA procedures through which FEGLI proceeds may be paid out in accordance with a divorce decree.

In contrast to the federal cases, the vast majority of foreign state courts have upheld state laws establishing equitable remedies in FEGLI cases. However, none of these cases involve a state statute similar to Virginia Code § 20-111.1(D), and many of them, like the federal cases, involve divorce decrees or separation agreements under which an insured is obligated to provide insurance benefits to his former spouse and/or children. Consequently, there appears to be an incongruity between federal and state analyses of FEGLIA preemption issues. *McCord v. Spradling*, 830 So. 2d 1188, 1193, 1203 (Miss. 2002) ("while the federal courts have

held that FEGLIA preempts state equitable actions, such is not the case with a large majority of state courts that have addressed this issue," including Texas, North Carolina, Illinois, Missouri, Pennsylvania, and New Jersey). Nevertheless, the Court finds the reasoning behind some of the state cases instructive.

In *Sedarous v. Sedarous*, for example, the New Jersey superior court held that FEGLIA does not preempt the state court from imposing a constructive trust on the insurance proceeds after the death of the insured. 285 N.J. Super. 316, 666 A.2d 1362, 1363 (N.J. Super. Ct. App. Div. 1995). Mr. Sedarous had designated his sister as the sole beneficiary of his life insurance policies. *Id.* He later commenced divorce proceedings against his wife, but before final judgment was entered, he died, and Mrs. Sedarous sought to impose a constructive trust on the FEGLI proceeds. *Id.* at 1363-64. The starting point for the court's analysis was *Ridgway*, which the court found distinguishable because (1) "FEGLIA is not attended by the exigency that motivated SGLIA, namely the congressional intention to provide military personnel on active duty with insurance unavailable to them in the private market because of the hazardous nature of their work[; and (2)] FEGLIA, unlike SGLIA, does not have any anti-attachment provision." *Id.* at 1365. The court then concluded:

> Considering ... the administrative convenience that is at the heart of [FEGLIA, and] the intensity and pervasiveness of the state interest in the financial protection of the dependents of the divorced obligor spouse, we are confident that FEGLIA's lack of an anti-attachment provision is the critical factor justifying, if not indeed compelling, the conclusion that *Ridgway* does not govern the FEGLIA preemption issue. Clearly, if Congress had intended the same immunity of proceeds from state court action in FEGLIA as it provided for in SGLIA, it could easily have done so by the simple expedient of including SGLIA's anti-attachment provision in FEGLIA. The fact that it did not militates strongly against both a preemption conclusion and a mandatory extension of *Ridgway* to FEGLIA problems.

*Id.* at 1367. The New Jersey court then held that, in light of paramount state interest in domestic relations, FEGLIA does not preclude the state court from imposing a constructive trust on insurance proceeds in the same

manner as if the insurance had been privately contracted for. *Id*. at 1366-67.

Finding *Sedarous* and similar state decisions persuasive, the Supreme Court of Mississippi also held that "the existence of a named beneficiary to whom the insurer is directed to pay any benefits does not eliminate any equitable claims to the funds paid." *McCord*, 830 So. 2d at 1203. The court emphasized the portions of other state decisions that laid out Congress's intent in enacting FEGLIA, namely, to alleviate administrative difficulties when paying out death benefits and to avoid serious delay in paying the benefits to survivors. *Id*. at 1196 (quoting *Kidd v. Pritzel*, 821 S.W.2d 566, 573 (Mo. App. 1991); *In re Estate of Anderson*, 195 Ill. App. 3d 644, 552 N.E.2d 429, 435, 142 Ill. Dec. 79 (1990)). The court also found persuasive the other courts' holdings that the "distinction between beneficiary status and ultimate equitable entitlement obviates any issue of federal preemption of state-court action." *Id*. at 1203. In sum, the state court decisions generally hold that FEGLIA does not preempt all equitable state law principles due to (1) the lack of an anti-attachment provision as in SGLIA or the SBP law; and (2) the underlying policy rationale behind the implementation of FEGLIA.

### 4. *FEGLIA Preemption of Virginia Code § 20-111.1(D)*

#### a. *Express Preemption*

The express preemption provision in FEGLIA states that the provisions of any FEGLI contract shall preempt any state law that "relates to group life insurance to the extent that the [state law] is inconsistent with the contractual provisions." 5 U.S.C. § 8709(d)(1). This clause thus expressly preempts any state law that is inconsistent with the FEGLI master policy, which provides the insured an absolute right to designate the beneficiary that he or she chooses.

In this case, there is no *direct* inconsistency between that right and Code § 20-111.1(D), which provides a cause of action for the insured's spouse at the time of his or her death against a former spouse who receives payment of the death benefit "not for value." Va. Code § 20-111.1(D). While the Virginia statute may *indirectly* impact Mr. Hillman's beneficiary designation, there is a key distinction between beneficiary status and ultimate equitable entitlement once FEGLI proceeds have been paid out. *McCord*, 830 So. 2d at 1193. Given that this Court must apply the federal preemption test in light of the United States Supreme Court's

articulated deference to the paramount state interest in domestic relations, the Court finds that Virginia Code § 20-111.1(D) is not expressly preempted by 5 U.S.C. § 8709(d)(1).

## b. *Conflict Preemption*

Virginia Code § 20-111.1(D) is impliedly preempted by FEGLIA if (1) the Virginia law actually conflicts with federal law, such that compliance with both statutes is impossible; or (2) the Virginia law stands as an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade*, 505 U.S. at 98. First, unlike *Ridgway* and *Dugan*, Va. Code § 20-111.1(D) does not actually conflict with any procedure or right in FEGLIA; the Virginia law does not compel the insured to designate any particular beneficiary, and FEGLIA does not create a cause of action that could apply to an individual in Ms. Hillman's situation. If Ms. Hillman ultimately reaches the FEGLI proceeds, in contrast to *Dugan*, her actions would not be in direct contravention of any "plain and precise" requirement or "clear prohibition" expressly provided for in FEGLIA.

Second, the House Report on the FEGLIA preemption provision explains that the provision was enacted "to eliminate all possibility of a conflict between Sections 7 and 8 of this Bill,[1] increasing levels of optional group life insurance available to employees, and any provision of state law limiting the amount of insurance which may be provided under a group insurance contract to citizens of the state." H.R. Rep. No. 96-1280 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3867, 3871. In addition, the Senate clarified that it had two reasons for establishing the FEGLI order of precedence: (1) to avoid administrative difficulties; and (2) to avoid serious delays in paying insurance benefits to survivors. *See* S. Rep. No. 1064 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2070, 2071; *Kidd*, 821 S.W.2d at 569-72 (examining the legislative history of 5 U.S.C. § 8705) (stating that "§ 8705 serves a valuable and worthwhile purpose by keeping the OPM and the insurance company out of legal entanglements"). A state law providing an equitable cause of action for the individual who was the insured's spouse at the time of his or her death, so that they may reach

---

[1] Sections 7 and 8 relate to additional optional life insurance for the insured and optional life insurance for the insured's family members. H.R. Rep. No. 96-1280, *reprinted in* 1980 U.S.C.C.A.N. 3867.

survivor benefits that a former spouse received "not for value," does not stand as an obstacle to Congress's stated objectives in enacting FEGLIA.

Furthermore, Congress's inclusion of anti-alienation provisions in SGLIA and the SBP law, coupled with Congress's omission of a similar provision in FEGLIA, is demonstrative of Congress's intent to *not* make the payees of FEGLI proceeds exempt from state law causes of actions. *Sedarous*, 666 A.2d at 1367 ("FEGLIA's lack of an anti-attachment provision is the critical factor justifying, if not indeed compelling, the conclusion that *Ridgway* does not govern the FEGLIA preemption issue."); *Kidd*, 821 S.W.2d at 571 ("[t]he omission of an anti-attachment clause supports a conclusion that nothing in FEGLIA dictates pre-emption of equitable state law principles."). If Congress intended FEGLIA to preempt equitable remedies, it would have expressly done so as it did with SGLIA and the SBP law.

### c. *Field Preemption*

Even if Va. Code § 20-111.1(D) is harmonious with FEGLIA, it may nevertheless be preempted if Congress had a "clear and manifest" intent of "complete ouster of state power" with respect to group life insurance for federal employees. *See Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 146, 83 S. Ct. 1210, 10 L. Ed. 2d 248 (1963). *See also English v. General Elec. Co.*, 496 U.S. at 79 (stating that preemption is implied when a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the field). As stated in the preceding section, Congress's omission of an anti-alienation provision in FEGLIA is one indication that Congress did not intend to completely occupy the field.

In addition, the United States Supreme Court has held that the preemption statute contained in the Federal Employees Health Benefits Act ("FEHBA"), which is almost identical to 5 U.S.C. § 8709(d)(1), does not completely preempt state law with respect to that field. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 680, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006). That preemption clause provided:

> The terms of any contract under [FEHBA] which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and

preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1). The language of the FEHBA preemption provision, "which relates to health insurance or plans," is even broader than the FEGLIA preemption provision language, "which relates to group insurance to the extent that the law or regulation is inconsistent with the contractual provisions." Therefore, given the Supreme Court's conclusion in *McVeigh* that Congress placed an express *limitation* on the reach of the FEGLIA preemption clause and that FEGLIA lacks an anti-alienation provision, the Court finds that Congress did not intend exclusive federal regulation of the field at issue.

## Conclusion

For the reasons set forth above, the Court holds that Virginia Code § 20-111.1(D) is not preempted by FEGLIA, and thus Ms. Maretta's Plea in Bar/Demurrer is hereby overruled.