**Philip Roger KIDD, et al., Appellants,**

v.

**Evelyn L. PRITZEL, et al., Respondents.**

No. WD 44359.

Missouri Court of Appeals,
Western District.

Dec. 24, 1991.

Application to Transfer Denied
March 13, 1992.

Therese M. Schuele, Kansas City, for appellants.

Nathan M. Nickolaus, Jefferson City, for respondents.

Before LOWENSTEIN, P.J., and FENNER and HANNA, JJ.

HANNA, Judge.

This is an appeal from the trial court's ruling granting the defendants'/respondents' motion for summary judgment. The plaintiffs/appellants are four children of the deceased, Mr. Roger H. Kidd. The defendants are Mr. Kidd's two sisters. Following Mr. Kidd's death the children filed a petition for recovery of trust assets and the removal of the sisters as trustees in the Probate Division at Jackson County, Missouri. The case was transferred to Cole County, Missouri when it was determined that Jackson County was an improper venue. The Cole County court granted defendants' motion for summary judgment ruling that the plaintiffs' claims were barred by the doctrine of pre-emption pursuant to 5 U.S.C. § 8701 et. seq. The plaintiffs appeal.

## FACTS

On July 14, 1972, the decedent, Roger H. Kidd, and his present wife, Mary Jane Kidd, entered into a property settlement agreement pursuant to their divorce. The relevant portion of that property settlement agreement included a provision in which the parties agreed that Roger Kidd would maintain his four children of the marriage [1] as the beneficiaries of his life insurance policy written under 5 U.S.C. §§ 8701 et. seq., the Federal Employees' Group Life Insurance Act ("FEGLIA").

A little over a month later, on August 25, 1972, Mr. Kidd executed a designation of beneficiary form with his employer naming his two sisters, Evelyn L. Pritzel and Darlene A. Schumacher, as beneficiaries of the FEGLIA policy.

Shortly thereafter, on November 7, 1972, Mr. Kidd executed his will which provided among other things as follows:

1) That the entire residue of his estate would go into a trust established by the will;

2) That his sisters would be the trustees of the trust as well as the personal representatives of his estate;

3) That the proceeds from his FEGLIA insurance policy which were payable to his sisters would be included in the trust estate for the benefit of his children;

4) That his children would be sole beneficiaries of the trust; and

5) That the trust was to remain in effect, with his sisters as trustees, until his last child was emancipated, at which time the remainder of the trust property would be divided equally among his children.

Mr. Kidd's last child was emancipated on November 29, 1985. Mr. Kidd died on April 11, 1988.

Sometime after his death, the insurance proceeds from the FEGLIA policy were paid to the sisters in accord with the designation of beneficiary form. The sisters retained the policy proceeds for their own benefit instead of placing the proceeds into the trust or otherwise distributing the proceeds to the surviving children as directed by the will.

On August 15, 1989, the children filed a petition for recovery of the trust assets, the removal of the sisters as trustees and

1. Mr. Kidd had another child with his later wife. That child is not a party to this appeal.

other relief. This petition was filed in the probate division of Jackson County, Missouri. The sisters filed a motion with the probate court to dismiss the petition for lack of venue.

In an order dated February 26, 1990, Judge John Borron concluded that venue was appropriate in either Cole County or Saline County, Missouri, the respective counties of the defendants' residence. The case was then transferred to Cole County.

The sisters filed a motion for summary judgment on May 24, 1990 in Cole County. In response to that motion, attorneys for the children stated that they intended to amend the pleadings to include a constructive trust claim. After a hearing was held on the motion for summary judgment, the court entered an order granting the motion and concluded that the childrens' claims were pre-empted by federal statute (specifically 5 U.S.C. § 8701 et. seq.). This appeal followed.

It is plaintiffs' position that Congress did not intend to exempt state law or equitable actions and that the federal statutes can be read in harmony with equitable state law claims. Plaintiffs concede that the sisters were the proper parties to be paid the policy proceeds from the insurer. However, they argue that nothing in the federal statute prevents the trial court from imposing a constructive trust on those proceeds if it is determined that the children are the persons rightfully entitled. Plaintiffs rely on case law from jurisdictions which refuse to apply the doctrine of pre-emption in the FEGLIA context.

On the other hand, defendants maintain that the trial court's ruling was correct because the federal law has pre-empted all state law claims, including the imposition of a constructive trust. Defendants rely on the language contained in FEGLIA (specifically §§ 8705 and 8709) as well as the underlying regulation 5 C.F.R. § 870.902 and case law which has applied the doctrine of pre-emption to FEGLIA.

The first and dispositive issue on this appeal is whether FEGLIA and the regulations promulgated thereunder were intended to pre-empt the equitable state law

claims which Mr. Kidd's children may have against his sisters.

■ Federal law pre-empts state law in several instances: When a federal statute contains specific language of pre-emption; when federal regulation is so persuasive that Congress left no room to supplant it; or when state law stands as an obstacle to congressional intent. *Tectonics, Inc. of Florida v. Castle Constr. Co.,* 753 F.2d 957, 961 (11th Cir.1985). *See also Derenco, Inc. v. Benjamin Franklin Federal Savings and Loan Assn.,* 281 Or. 533, 577 P.2d 477, 483–84 (1978).

At the outset we note that Congressional intent is the guidepost to judicial interpretation of federal statutes. *Stribling v. U.S.,* 419 F.2d 1350, 1352 (8th Cir.1969). Therefore, an examination of the legislative history behind FEGLIA is necessary to determine whether Congress intended FEGLIA to pre-empt state law claims.

FEGLIA was first proposed in 1954 for the purpose of providing low cost group life insurance to federal employees. 1954 U.S.Code Cong. & Admin.News., Volume 2, p. 3052. *See also Rollins v. Metropolitan Life Ins. Co.,* 863 F.2d 1346, 1350 (7th Cir.1988). The Congressional committee which introduced the bill felt it was one of the important new proposals necessary to provide federal employees with a well-rounded personnel program and that the bill carried out the plan outline by President Eisenhower in his message to Congress of May 19, 1954. *1954 U.S.Code Cong. & Admin.News,* Volume 2 at 3053. In that message President Eisenhower noted that there were two predominant features which made the plan especially advantageous to government and its personnel. First, it allowed federal employees to "carry out their responsibilities to their families," and secondly, it made available group life insurance which was an "essential element in the development of a comprehensive personnel program that applies to Government service the best practices of progressive, private employers." *Id.* at 3056.

The relevant sections of the Act upon which the trial court and respondent's rely are §§ 8705 and 8709 as well as 5 C.F.R. § 870.092. For clarity we will address these two statutory provisions of FEGLIA and the underlying regulation individually in the sections that follow as well as the cases cited by the parties in support of their respective positions.

## I. SECTION 8705

■ Section 8705 of FEGLIA provides the order of precedence in which the life insurance proceeds from a FEGLIA policy are to be paid upon the death of a policyholder. Respondents claim this section not only mandates who is initially to receive the FEGLIA policy proceeds, but also that Congress would not have included this section unless it intended for § 8705 to preempt state law claims. We disagree.

There has been a split in the jurisdictions about whether § 8705 should preempt all state law claims or whether the statute merely provides a simple procedure for payment of the policy's benefits. However, from its inception, the sole purpose of this section has been to provide for the speedy and economical settlement of claims.[2]

In 1966, the first item of the order of precedence in Section 4,[3] to be applied by the insurer when paying the proceeds from a FEGLIA policy, was amended to read:

First, to the beneficiary or beneficiaries as the employee may have designated *by a signed and witnessed writing* received

prior to death in the employing office.... *For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed shall have no force or effect.*[4] Pub.L. 89–373, 1966 U.S.Code Cong. & Admin.News., Volume I, p. 91. (Emphasis added to indicate amended language).

The 1966 amendment was expressly proposed in response to a California case entitled *Sears v. Austin,* 292 F.2d 690 (9th Cir.1961). *See* Pub.L. No. 89–373, 1966 U.S.Code Cong. & Admin.News, Volume 2, p. 2071. In *Sears* no beneficiary had been named on the insurance contract. The funds were deposited into the court registry and the contest was between competing beneficiaries of the Act and the will. The court found that the decedent's holographic will was sufficient to designate a beneficiary and should mandate who was to receive the proceeds of the insurance policy rather than the order of precedence set out in the federal statute. The legislative history suggests that if this equitable precedent is generally followed the result could lead to administrative difficulties for the Civil Service Commission,[5] the insurance companies and, more importantly, serious delay in paying benefits to the survivors of federal employees. *Id.*

Jurisdictions both for and against preemption agree that Congress' intent in amending Section 4 of the Act in 1966 was 1) to alleviate the administrative difficulties previously suffered by the Civil Service Commission and the insurance companies

---

**2.** In 1954, Philip Young, chairman of the United States Civil Service Commission (the agency which would eventually implement the plan) drafted a narrative analysis of the plan (a draft bill) which was submitted to Congress and indicated that Section 4 of the Act would establish an order of precedence for paying death claims. *1954 U.S.Code Cong. & Admin.News,* Volume 2, p. 3057. The order was the same as that contained in the Civil Service Retirement Act. *Id.* Mr. Young indicated that "[t]his order of precedence has proved highly satisfactory for the speedy and economical settlement of claims." *Id.*

**3.** In 1966 FEGLIA was retitled as §§ 8701 et. seq. Section 8705 of the present Act replaced Section 4 of the 1954 Act. In their brief, respon-

dents incorrectly suggest that § 8705 did not exist in the original Act. The 1966 amendment simply clarified the Congressional intent with respect to this section.

**4.** Mr. Kidd did not file his property settlement agreement or will with his employing office or the Office of Personnel Management. However, the designated beneficiary is not at issue here. The issue is whether a state court may impose a constructive trust on the proceeds of the insurance policy once they have been paid out by the insurer.

**5.** This department of the Civil Service Commission is now known as the Office of Personnel Management ("OPM").

when paying death benefits and 2) to avoid serious delay in paying these benefits to survivors of the federal employees. *See O'Neal v. Gonzalez*, 839 F.2d 1437 (11th Cir.1988); *Stribling*, 419 F.2d at 1354; and *In re Estate of Anderson*, 195 Ill.App.3d 644, 142 Ill.Dec. 79, 552 N.E.2d 429 (1990).

Although no United States Supreme Court case has ever directly addressed FEGLIA claims with respect to § 8705, the case of *Ridgway v. Ridgway*, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981) has been continuously cited by jurisdictions opting to accept the pre-emption doctrine in FEGLIA cases. Respondents also cite *Ridgway* to support the application of pre-emption. *Ridgway* is distinguishable.

The *Ridgway* case involved an insurance policy issued under the Servicemen's Group Life Insurance Act of 1965 (SGLIA).[6] In *Ridgway* the insured's ex-wife (as legal representative of three minor children) brought an action against the insurance company seeking to enjoin payment of the policy proceeds to the insured's second wife who was the named beneficiary. The Supreme Court held that the insured's beneficiary designation under the SGLIA policy prevailed over the state divorce decree which had ordered Mr. Ridgway to maintain his three children as the beneficiaries of his SGLIA policy and also prevailed over the constructive trust imposed on the policy proceeds by the state court. *Id.* at 46–47, 102 S.Ct. at 49–51. The Court found that as a consequence of the supremacy clause, the state divorce decree, like other law governing the economic aspects of domestic relations, must give way to clearly conflicting federal enactments. *Id.* at 46, 102 S.Ct. at 49.

*Ridgway* was decided on two separate points. First, the court determined that the order of precedence set out in the Act for the payments of benefits (a provision nearly identical to § 8705 of FEGLIA) and the underlying regulations, conferred a right on Mr. Ridgway to designate the policy beneficiary. *Id.* at 59–60, 102 S.Ct. at 57. Section 8705 of FEGLIA also confers that right and this is not a disputed issue here.

Secondly, and most importantly, the *Ridgway* court keyed its decision to 38 U.S.C. § 1970(g) of SGLIA, described as an anti-attachment provision, and held that the imposition of a constructive trust upon the insurance proceeds was inconsistent with that section of the Act. *Id.* at 60, 102 S.Ct. at 57. This portion of the *Ridgway* decision holds the true relevance to our decision today. Section 770(g) of SGLIA states in relevant part as follows:

> Payments of benefits due or to become due under (SGLIA) ... shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary....

The Court concluded, relying heavily upon the anti-attachment provision, that any diversion of the proceeds of the policy by means of a court imposed constructive trust would operate as a forbidden "seizure" of those proceeds. *Id.* Based on the "strong language of the anti-attachment provision" contained in SGLIA, the Court found nothing to indicate that Congress intended to exempt claims based on property settlement agreements.[7] *Id.* at 61, 102 S.Ct. at 58.

---

**6.** This Act was implemented in response to the Vietnam war to provide life insurance for servicemen who could not otherwise obtain life insurance from a private carrier. *Ridgway*, 454 U.S. at 50, 102 S.Ct. at 52. *See also Rollins*, 863 F.2d at 1351.

**7.** *Wissner v. Wissner*, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950) also dealt with an Act (the National Service Life Insurance Act of 1958 "NSLIA") specifically designed to provide life insurance for military servicemen, not for civilian federal employees. In this respect, NSLIA is closely akin to SGLIA. On the other hand, FEGLIA was designed to provide inexpensive group life insurance for all federal employees, in order to assimilate a private employers' group life insurance plan. The court in *Wissner* indicated that the deliberate congressional purpose of NSLIA was to provide a "uniform and comprehensive system of life insurance for members and veterans of the armed forces of the United States." *Wissner, Id.* at 658, 70 S.Ct. at 399. Congress' desire was to "afford as much material protection as possible to it's fighting force." *Id.* at 660, 70 S.Ct. at 401. The Court

When Congress wrote FEGLIA, unlike SGLIA, it did not include an anti-attachment provision such as that found in 38 U.S.C. § 1970(g) nor is such a provision found in the underlying regulations. There are many similar provisions in FEGLIA and SGLIA, but the omission of an anti-attachment clause supports a conclusion that nothing in FEGLIA dictates pre-emption of equitable state law principles. *See Rollins*, 863 F.2d at 1352. If Congress had desired to totally pre-empt all state law claims it would have included an anti-attachment provision to FEGLIA. *Ridgway* expressly stated that if Congress chose to avoid the result in that case, it could do so by enacting legislation which did not include an anti-attachment provision. *Ridgway*, 454 U.S. at 63, 102 S.Ct. at 59. That is precisely what Congress did when it enacted FEGLIA.

The *Ridgway* court also recognized that the pre-emptive power of SGLIA would not shield cases of fraud or breach of trust. *Id.* at 58–59, 102 S.Ct. at 56–57. A beneficiary of an insurance policy may have breached a trust to the insured, or an insured may be coerced or tricked into naming a beneficiary as a result of undue influence, duress, or fraud. In this event the Supreme Court acknowledged that the law provides a remedy for those situations. *Id.* at 59, 102 S.Ct. at 57. To accept the proposition that Congress intended the named beneficiary on the last filed designation of beneficiary form to be the person entitled to keep the proceeds of the policy, regardless of the surrounding circumstances, places hundreds of years of well-developed law at the fatal mercy of a statutory provision intended solely to promote administrative convenience and the expeditious payment of claims. The *Ridgway* court did not exclude the availability of an equitable constructive trust where there is fraud or a breach of trust.

■ The United States Supreme Court has consistently recognized that the whole subject of domestic relations between husband and wife, parent and child, belongs to laws of the States, not the laws of the United States. *Rose v. Rose*, 481 U.S. 619, 625, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599 (1987). *See also Rollins*, 863 F.2d at 1350. There is a higher standard for the establishment of federal pre-emption in the area of domestic relations. *Rose*, 481 U.S. at 625, 107 S.Ct. at 2033. The state law must do major damage to clear and substantial federal interests in order for the pre-emption doctrine to apply. *Id.* Justice Marshall delivered the opinion in *Rose* and noted that child support obligations and alimony were "deeply rooted moral responsibilities" and may be an exception to the anti-attachment provisions of the statute, *Id.* at 631–32, 107 S.Ct. at 2036–37, a position supportive and in harmony with one of the important purposes of FEGLIA (to allow federal employees to carry out their responsibilities to their families). *See* President Eisenhower's message to Congress, 1954 U.S.Code Cong. & Admin.News, Volume 2, p. 3056.

We base our decision today on the reasoning as found in the *Rollins* decision, which is cited throughout this opinion. In *Rollins*, the 7th Circuit of the U.S. Court of Appeals found that Mr. Rollins' estranged second wife technically qualified as his widow within the meaning of the statute, although there was clear evidence that the marriage had totally collapsed. *Rollins*, 863 F.2d at 1349. However, this determination did not preclude the imposition of a constructive trust in favor of Mr. Rollins' children from his first marriage. The absence of an anti-attachment clause in FEGLIA was extremely important in the *Rollins* decision just as it is in our decision today.

The imposition of a constructive trust does not interfere with § 8705 or who holds

---

stated that "the possession of government insurance, payable to the relative of choice, might well directly enhance the morale of its servicemen." *Id.*

Congress purposely provided an anti-attachment provision in NSLIA, similar to that contained in SGLIA, in order to better carry out its specific intent with regard to insurance offered to the military (a group which otherwise has problems obtaining insurance from a private carrier). Congress specifically omitted such an anti-attachment provision in FEGLIA.

legal title to the FEGLIA proceeds. In our case, the legal title is clearly held by the sisters. However, if the children hold an equitable interest in those proceeds, then a constructive trust protects that interest. In *Roberts v. Roberts*, 560 S.W.2d 438 (Tex. Civ.App.1977) the court upheld the imposition of a constructive trust for similar reasons. *Id.* at 440. The *Roberts* court found that the trial court had specifically recognized Mr. Roberts' widow as the designated beneficiary and that she held legal title to the proceeds of the FEGLIA policy. *Id.* The trial court did not hold the children to be entitled to the proceeds as beneficiaries of the policy, but found they had a vested equitable interest and title to the proceeds. *Id.* The judgment of the trial court did not change, alter or affect the designated beneficiary of the policy and, therefore, did not contravene the provision of the Act relating to the designation of beneficiary. *Id.* Similarly, if the trial court were to find a constructive trust appropriate in the present case, the imposition would not contravene § 8705 or the overall purpose of the Act. *See also Anderson*, 142 Ill.Dec. at 85, 552 N.E.2d at 435.

A legitimate concern expressed by some courts has been that the rights conferred on the insured by § 8705 would be rendered meaningless if the designated beneficiary were not entitled to keep the proceeds, irrespective of any equitable claims. *See Metropolitan Life Ins. Co. v. McShan*, 577 F.Supp. 165, 168 (N.D.Cal.1983). However, § 8705 serves a valuable and worthwhile purpose by keeping the OPM and the insurance company out of legal entanglements. It fulfills the congressional intention by reducing their administrative and legal hassles. Regardless of what claims are brought to recover the proceeds once they are paid out to the designated beneficiary, the purpose of § 8705 has been served. Neither the insurance carrier nor the government can be burdened by participation in a state judicial proceeding to recover the proceeds. Nor will they be saddled with the unpleasant and cumbersome task of interpreting state statutes, divorce decrees, property settlement agreements or wills. Under § 8705 the insurer

may simply pay the policy proceeds quickly and directly to the named beneficiary and be done with it. If the insured fails to designate a beneficiary, the statute provides direction to determine the person to pay. This does not bar equitable claims and equitable claims do not render § 8705 meaningless. *See Rollins*, 863 F.2d at 1352.

The Act was designed to provide competitive group life insurance to federal employees, consistent with their private employee counterparts. *Id.* at 1350. Providing such insurance *is* the purpose of FEGLIA. Section 8705 provides a simple and economical way for the government agency and the participating insurance company to process a claim once the federal employee has died. That simple and expeditious payment of the proceeds to the person designated on the standard government form is the purpose of § 8705 and is consistent with the legislative intent expressed by Congress in the 1966 amendment to Section 4 of the original Act.

## II. SECTION 8709(d)(1)

■ The other provision of FEGLIA which the respondents cite in favor of preemption is § 8709(d)(1).

Subsection (d) of § 8709 states in relevant part as follows:

The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) *shall supersede and pre-empt any law of any state* or political subdivision thereof *or any regulation* issued thereunder, *which relates to group life insurance* to the extent that the law or regulation is inconsistent with the contractual provisions.... [Emphasis added].

Respondents claim the language contained in subsection (d) expressly pre-empts all state law. That interpretation is strained and is an extension of the scope of the federal statute. This section is only concerned with conflicts between state regulation of *group life insurance* programs and the express contractual provisions con-

tained in FEGLIA policies. This section is not concerned with state law claims brought once the proceeds of a policy are paid out. The present case deals with equitable state law claims sounding in breach of fiduciary duty and conversion and the invocation of a constructive trust to remedy those acts. Nothing in the claims presented before us deal with state laws or regulations concerning "group life insurance." *See Mall v. Atlantic Fin. Fed.*, 127 F.R.D. 107, 110–11 (W.D.Pa.1989).

Subsection (d) was added by amendment in 1980 under Pub.L. 96–427. The legislative history concerning that public law states the purpose of the amendment was to increase the amounts of group life insurance available to federal employees, to provide additional life insurance to family members, and to revise the reduction in the life insurance of annuitant. Life Insurance Act of 1980, Pub.L. 96–427, 1980 U.S.Code Cong. & Admin.News (94 Stat. 1831) p. 3868. The amendment was in response to declining participation in the insurance program. *Id.* at 3869. No explanation was given concerning the congressional intent of adding subsection (d) to § 8709. We read this provision of FEGLIA consistent with our interpretation of § 8705. The purpose of 8709(d)(1) is to alleviate the difficulty of interpreting state laws and regulations concerning group life insurance. Regardless of whether those state laws place limitations on the amount of coverage, who may be covered, to whom the benefits may be paid or otherwise, the contract of insurance written under FEGLIA will control. However, once the amount of proceeds are determined and paid to the designated beneficiary nothing pre-empts equitable state law claims. Consistent with the intent of the entire amendment, this interpretation avoids any state restrictions placed on group life insurance programs.

As stated above, the language of § 8709(d) makes it clear that the provision is expressly limited to state laws and regulations "which relate to group life insurance," not state laws and regulations relating to conversion, breach of fiduciary relationships or breach of trust. Jurisdictions which have used this provision to support invoking the pre-emption doctrine in FEGLIA cases have ignored the statute's expressed language. These cases have interpreted subsection (d) as pre-empting *all* state law claims. *See Lewkowicz v. Lewkowicz,* 761 F.Supp. 48, 50–51 (E.D.Mich. 1991); and *Mercier v. Mercier,* 721 F.Supp. 1124, 1125, 1128 (N.D.1989). Defendants have similarly ignored the expressed language in the present case and have misinterpreted the scope of that section. It must be assumed that Congress was merely clarifying its intent to relieve administrative difficulties when a conflict arose between state insurance regulations pertaining to group life insurance programs and the expressed contractual provisions of FEGLIA policies.

### III. 5 C.F.R. § 870.902

█ Respondents also claim that 5 C.F.R. § 870.902(e) is in conflict with state law and, therefore, this regulation pre-empts state law claims. 5 C.F.R. § 870.-902(e) states in pertinent part:

> a change in beneficiary may be made at any time without the knowledge or consent of the previous beneficiary and this right cannot be waived or restricted.

This regulation was promulgated to compliment § 8705. We read this regulation in harmony with the purpose of FEGLIA and with state law claims brought by parties rightfully entitled to a FEGLIA policy's proceeds. While the regulation does compliment the Congressional intent of § 8705 (to alleviate administrative hassles and expedite the payment of claims), this regulation does not pre-empt equitable state law claims.

Some jurisdictions have considered § 870.902 as refusing to allow claims brought under state court ordered divorce decrees or state court approved settlement agreements to override the person named on the designation of beneficiary form. *See Dean v. Johnson,* 881 F.2d 948 (10th Cir.1989); *McShan,* 577 F.Supp. 165; and *Knowles v. Metropolitan Life Ins. Co.,* 514 F.Supp. 515 (N.D.Ga.1981).

The regulation was drafted by the OPM and was finally enacted on January 25, 1984. 49 F.R. 3033 (1984).[8] This regulation read in the context suggested by respondents would impermissibly expand the scope and purpose of the Act.

It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). Congress authorized the OPM to prescribe regulations to carry out the purposes of the Act. 5 U.S.C. § 8716(b). The purpose of FEGLIA is to make low-cost group life insurance available to federal employees. An agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the expressed intent of Congress. *U.S. v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 131, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985). Review is limited to the question of whether the interpretation, whether by regulation or otherwise, is reasonable, in light of the language, policies, and legislative history of the Act. *Id.* The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. *Chevron, U.S.A., Inc. v. Natural Resources Defense*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694 (1984), citing many cases. The OPM is not a party to this action and has not expressly interpreted § 8705 by promulgating § 870.902. Section 870.902 is not a regulation interpreting § 8705, but is simply a compliment to that provision. Our obligation is not to review the OPM's interpretation of § 8705 but rather to determine if there is a reasonable interpretation of the regulation consistent with carrying out the purpose of the Act. Therefore, we assume that the OPM enacted the regulation in harmony with the purpose of FEGLIA and not as barring equitable state law claims to the proceeds of

FEGLIA policies. If Congress had intended to take such a step it would have expressed that intent in clear terms. The only reasonable applicability of § 870.902 to the Act is to further promote the expeditious payment of claims and relief from the administrative burdens imposed on the government agency and the insurance company. The lower the administrative costs in implementing the insurance program, the lower the cost of the insurance. This interpretation is consistent with carrying out the purpose of the Act.

## IV.   CONSTRUCTIVE TRUST

■   A constructive trust is not a technical trust, but is a method or formula used by a court of equity as a means of rectifying a situation where, as the result of the violation of confidence or faith in another, a party has been wrongfully deprived of some title. *Harlan v. Bishoff*, 649 S.W.2d 230, 233 (Mo.App.1983).

## V.   CONCLUSION

In the present case Mr. Kidd entered into a settlement agreement, designated the beneficiaries of his insurance policy, and executed a will which was intended to establish a trust for the benefit of his children, all within a time span of a few short months. It is not our place to decide if the insurance proceeds were taken in trust or if a breach of trust has occurred, that chore being the responsibility of the trial court. We only conclude that the plaintiffs are not barred by 5 U.S.C. § 8701 et. seq. from attempting to prove that the insurance proceeds in question were taken in trust.

The plaintiffs initially alleged the defendants breached their fiduciary duty as trustees of the trust by failing to account for all of the trust assets and committed a breach of trust by refusing to abide by the terms of Roger Kidd's will. This was done through a claim requesting removal and surcharge of defendants as trustees of the

---

**8.**   Nearly identical language to that contained in § 870.902 can be found in NSLIA, 38 U.S.C. §§ 801 et. seq. *See Wissner*, 338 U.S. at 658, 70 S.Ct. at 399. However, this provision of NSLIA was statutory, not enacted by regulation. It is interesting to note that this regulation, enacted by the OPM, not Congress, was not added until FEGLIA had been in place for 30 years.

trust. They later requested leave to amend their petition to add counts of conversion, breach of fiduciary duty and to request the imposition of a constructive trust. The plaintiffs' claims being under equitable state law principles and not to determine who the insurer is required to initially pay or one concerning "group life insurance," these claims do not contravene the federal law. The claims are not expressly pre-empted by FEGLIA. The claims do not cause administrative hassles for the OPM or the insurance company. And finally, the claims do not hinder the expedient payment of the benefits to the rightful beneficiaries, but only serve to meet that end as justice requires. Congress did not intend the worthwhile purposes of the law (to provide low-cost life insurance and to prevent delay in the payment of claims) to override a fiduciary relationship or aid the violators of that fiduciary duty. Plaintiffs are entitled to be heard on their claims but neither the OPM or the insurance company should be a party to those proceedings.

Our result finds no conflict, but only that the expediency requirements of § 8705 are consistent with the search for equity by the state laws and courts. FEGLIA can and is read in harmony with the function and responsibilities of the domestic and probate courts with a result where equity prevails.

The plaintiffs have alleged that the sisters have violated a confidence which might warrant the imposition of a constructive trust. We hold that the claims of the plaintiffs are not pre-empted by FEGLIA. The trial court's ruling is reversed and the case remanded for further proceedings to entertain the plaintiffs' claims as shall be properly submitted by way of an amended petition in accordance with this decision.

All concur