Wakako Chaisson FAGAN f/k/a Wakako Chaisson, Appellant,

v.

Yoshiko CHAISSON, Appellee.

No. 04–04–00437–CV.

Court of Appeals of Texas, San Antonio.

July 13, 2005.

Rehearing Overruled Sept. 12, 2005.

Charles M. Jefferson, Law Office of Charles M. Jefferson, Robert E. Golden, Robert E. Golden, P.C., San Antonio, for appellant.

James N. Higdon, Higdon, Hardy & Zuflacht, L.L.P., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

This appeal concerns a suit to enforce a divorce decree. Wakako Fagan claims the trial court erred by enforcing the divorce decree as to her deceased husband's federal employee life insurance policy, lump sum death benefit, and survivorship annuity. She further claims the trial court erred by awarding Yoshiko Chaisson attorney's fees. We affirm.

### FACTUAL & PROCEDURAL BACKGROUND

The facts of this case are undisputed. Aubin Chaisson and Yoshiko Chaisson were married in 1956. From 1981 until his

death in 1997, Aubin worked for the United States Government. Through his employment with the federal government, Aubin acquired a term life insurance policy under the Federal Employee Group Life Insurance Act ("FEGLIA"). The total life insurance benefit under this policy was $50,000. Aubin also accrued other benefits as a result of his federal employment, including a lump sum death benefit in the amount of $67,707.97 and a survivorship annuity benefit in the amount of $277.00 per month.

Aubin and Yoshiko divorced on September 15, 1994. Pursuant to Aubin and Yoshiko's property settlement agreement, the 274th Judicial District Court of Comal County, Texas entered a decree of divorce awarding Yoshiko 50% of the retirement benefits Aubin had accrued as of September 15, 1994. The court also awarded Yoshiko, pursuant to the parties' agreement, 100% of the community interest in any other property (other than personal effects) that Aubin did not disclose to her during the divorce proceedings. Shortly after the trial court entered its written divorce decree, Aubin married Wakako.

Yoshiko subsequently appealed from the decree of divorce entered by the trial court because she did not believe it accurately reflected the parties' property settlement agreement. On September 18, 1996, the Austin Court of Appeals reversed the trial court's judgment and remanded the cause for a new trial as to the division of the marital estate between Aubin and Yoshiko. Aubin filed a petition for review with the Texas Supreme Court following the court of appeals's judgment.

On April 30, 1997, while his petition for review was pending before the supreme court, Aubin died. Sometime after his death, Aubin's FEGLIA insurance policy proceeds were paid to Wakako in accordance with the designation of beneficiary form he completed before his death. In addition, both Yoshiko and Wakako applied for Aubin's survivorship annuity and lump sum death benefit following his death. Besides filing her claim for Aubin's federal benefits, Yoshiko filed an original petition in the 225th Judicial District Court of Bexar County, Texas against Wakako, her deceased husband's estate, and the Office of Personnel Management ("OPM").[1] Yoshiko's petition claimed that she was the rightful beneficiary of Aubin's lump sum death benefit and survivorship annuity, not Wakako. Accordingly, the petition requested that the trial court enjoin the OPM from paying the disputed benefits to Wakako until the division of the marital estate between Aubin and Yoshiko was finalized. The petition also requested the court to enjoin Wakako from dissipating any benefits OPM had previously paid to Wakako.[2]

Aubin's petition for review to the Texas Supreme Court was denied by the court on November 13, 1997. That same day, the OPM rendered an initial decision concerning the distribution of Aubin's federal benefits. The OPM determined Wakako was the proper beneficiary of Aubin's benefits, not Yoshiko.

Following the supreme court's denial of Aubin's petition for review, the cause was remanded to the County Court at Law of Comal County to divide the marital estate between Aubin and Yoshiko. After several hearings, the County Court at Law entered an "Amended Final Judgment of Divorce and Judgment Granting Other Re-

---

1. The OPM is the body that administers the federal employee benefits at issue in this case.

2. The trial court granted the relief requested by Yoshiko in her original petition on October 23, 1997, the same day the petition was filed.

lief" on June 19, 2003. The court once again divided the marital estate in accordance with the parties' property settlement agreement. With respect to Aubin's FEGLIA policy, lump sum death benefit, and survivorship annuity, the court made the following findings and awards:

10. *Former Spouse Survivorship Annuity*—The Court finds that a Civil Service Survivorship Annuity exists; it was an undisclosed asset; [Yoshiko] should be awarded 100% of the community interest therein; [Yoshiko] should be a former spouse beneficiary of such survivorship annuity; as of July 26, 2002, the total survivorship annuity interest is equal to approximately $277.00; and [Yoshiko's] share is equal to 83.13% interest of the total survivorship entitlement (or $221.13 as of July 26, 2002) and [Aubin's] "post divorce separate property" interest (or the widow's interest) to be equal to 16.87% (or $44.87 as of July 26, 2002).

IT IS THEREFORE ORDERED AND DECREED that [Yoshiko] ... is awarded a 83.13% interest in the survivorship annuity attributable to [Aubin's] benefits under the FERS.

* * *

11. *Civil Service Lump Sum Death Benefit*—The Court finds that a Civil Service Lump Sum Death Benefit existed at the time of the parties' Agreement; it was an undisclosed asset which was fraudulently concealed by [Aubin]; [Yoshiko] should be awarded 100% of the community interest therein; [Yoshiko] should be a former spouse beneficiary of such lump sum benefit[,] which as of July 26, 2002, the total lump sum death benefit is equal to approximately $67,707.97, including accrued interest thereon; [Yoshiko's] share is equal to $40,227.20 (which includes accrued inter-

est) of the total lump sum death benefit heretofore payable as a result of [Aubin's] death to his surviving spouse/widow, Wakako Chaisson.

IT IS THEREFORE ORDERED AND DECREED that [Yoshiko] be awarded judgment against [Aubin] and/or his estate in the sum of $40,227.40 for [Yoshiko's] share of the Civil Service Lump Sum Death Benefit.

* * *

13. *Civil Service Life Insurance Proceeds*—The Court finds that a Civil Service Life Insurance policy existed at the time of the parties' Agreement; it was *not* an undisclosed asset; it is not covered and/or treated by the residuary award to [Yoshiko] of all community property not otherwise specifically treated in the parties' Agreement; [Yoshiko] should, however, be awarded 50% of the proceeds, it being found to be an undivided asset; the total payable upon [Aubin's] death being $50,000 and having been previously paid to Wakako Chaisson as the named beneficiary of said Civil Service Life Insurance Policy; the designation of Wakako Chaisson as the beneficiary of the Life Insurance policy was a breach of [Aubin's] fiduciary duty to [Yoshiko] at the time of the parties' Agreement, as well as at all times thereafter; and [Yoshiko's] share is equal to $25,000, together with pre-judgment interest thereon as of July 26, 2002 in the sum of 12,700, of the proceeds of the Civil Service Life Insurance policy heretofore paid to [Aubin's] widow, Wakako Chaisson.

IT IS THEREFORE ORDERED AND DECREED that [Yoshiko] be awarded judgment against [Aubin] and/or his estate in the sum of $37,000 as [Yoshiko's] share of the Civil Service Life Insurance policy proceeds.

Aubin's estate did not contest the "Amended Final Judgment of Divorce and Judgment Granting Other Relief" entered by the trial court.

On August 12, 2003, Yoshiko filed an amended petition in her Bexar County proceeding against Wakako, Aubin's Estate, and the OPM. Yoshiko's amended petition requested the trial court to enforce the final divorce decree's awards concerning the FEGLIA insurance policy, lump sum death benefit, and the survivorship annuity.[3] Following a bench trial, the trial court entered a judgment in favor of Yoshiko. The trial court's judgment enforced the awards set forth in the final divorce decree and imposed a constructive trust on all of the benefits and proceeds belonging to Yoshiko that were paid to Wakako.

■ Following the trial court's judgment, Wakako brought this appeal. In five issues, Wakako claims the trial court erred by: (1) imposing a constructive trust on her deceased husband's FEGLIA insurance proceeds because a state court is precluded under FEGLIA from imposing a constructive trust upon such proceeds; (2) enforcing the divorce decree concerning her deceased husband's lump sum death benefit and survivorship annuity because the court lacked subject matter jurisdiction over such benefits; (3) awarding Yoshiko her ex-husband's lump sum death benefit and survivorship annuity because

she is not entitled to such benefits under federal law; (4) miscalculating the value of Yoshiko's share of her ex-husband's lump sum death benefit; and (5) awarding Yoshiko attorney's fees when there is no legal basis for such fees.[4]

### DISCUSSION

In her first issue, Wakako claims that the trial court erred by imposing a constructive trust on the FEGLIA proceeds paid to her because state courts are precluded under FEGLIA from imposing a constructive trust upon such proceeds. Wakako relies on language contained within the version of FEGLIA in effect at the time of Aubin's death (specifically sections 8705 and 8709),[5] regulation 5 C.F.R. section 870.802(f), and case law which has applied the doctrine of preemption to FEGLIA. By contrast, it is Yoshiko's position that there is nothing in the federal statutes or regulations preventing state courts from imposing a constructive trust on FEGLIA insurance policy proceeds. Yoshiko relies on case law from several jurisdictions refusing to apply the preemption doctrine to FEGLIA. Therefore, we must decide whether FEGLIA and the regulations promulgated under it were intended to preempt state action affecting FEGLIA insurance proceeds.

### PREEMPTION

■ Whether a particular federal law preempts state law depends on statutory

---

3. Yoshiko nonsuited OPM from the Bexar County cause of action on December 19, 2003.

4. As a preliminary matter, Yoshiko and Wakako dispute whether the present appeal constitutes an impermissible collateral attack on the judgment entered by the Comal County Court at Law in the divorce action between Yoshiko and Aubin. After reviewing the parties' contentions, we hold that Wakako's present appeal does not constitute an impermissible attack on the Comal County judgment. This

appeal concerns Wakako's right to benefits created by her husband's death, an issue not litigated in the Comal County divorce action. Thus, Wakako's appeal is not an attack on the Comal County divorce decree.

5. FEGLIA was amended by Congress shortly after Aubin's death. There is no dispute that Aubin complied with the requirements of former section 8705 and validly designated Wakako as the beneficiary of his life insurance policy.

intent.[6] When construing federal statutes, we look first at the language of the entire statute to determine if the language in question has a plain and unambiguous meaning regarding the issue before us. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). Our inquiry ends if the statutory language is unambiguous and " 'the statutory scheme is coherent and consistent.' " *Id.* If the relevant statutory language is ambiguous and if no agency responsible for implementing the statute has interpreted the language, then we seek guidance in the statutory structure, relevant legislative history, and congressional purposes in enacting the statute. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 737, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). Where an agency responsible for implementing the statute has interpreted the statutory language at issue, we give deference to that agency's reasonable interpretation of the relevant language. *U.S. v. Mead Corp.*, 533 U.S. 218, 227–28, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001).

A reviewing court reads the words of a statute in their context, taking note of their place in the overall statutory scheme. *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). We must interpret the statute as a " 'symmetrical and coherent regulatory scheme' " and fit " 'all parts into an harmonious whole.' " *Id.* If possible, we must construe the language of the statute so that no word is rendered meaningless or insignificant. *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001). We review the trial court's interpretation of applicable statutes *de novo*. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex.1989).

Although the specific preemption question before us has yet to be addressed by this court, it has been considered both by federal and state courts outside this jurisdiction. These courts, however, have reached disparate results on the issue. Numerous federal courts have held that, where state laws conflict with FEGLIA's provisions, FEGLIA preempts state law. *See Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 367 (8th Cir.1997) ("It has been consistently held in regard to FEGLIA that a divorce decree cannot operate as a waiver or restriction of an insured's right to change the beneficiary when federal regulations conflict."); *Metropolitan Life Ins. Co. v. Sullivan*, 96 F.3d 18, 20 (2d Cir.1996) ("To the extent that New York law allows for a change of beneficiaries by third parties, it conflicts with FEGLIA and is preempted."); *Metropolitan Life Ins. Co. v. Christ*, 979 F.2d 575, 580 (7th Cir.1992) ("FEGLIA preempts the divorce decree and constructive trust remedy."); *Dean v. Johnson*, 881 F.2d 948, 949 (10th Cir.1989) ("The state domestic relations court order ostensibly restricts the federal insured's right to designate a beneficiary and thus cannot be valid under FEGLIA."); *O'Neal v. Gonzalez*, 839 F.2d 1437, 1440 (11th Cir.1988) ("Congress intended to establish ... an inflexible rule that the beneficiary designated in accordance with the statute would receive the policy proceeds, regardless of other documents or the equities in a particular case.").

---

6. *FMC Corp. v. Holliday*, 498 U.S. 52, 56, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). Preemption of state law occurs in three different ways. First, Congress may define expressly to what extent a federal statute preempts state law. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Second, preemption may be inferred when a pervasive scheme of federal regulation makes it reasonable to infer Congress intended exclusive federal regulation of the area. *Id.* at 79, 110 S.Ct. 2270. Finally, it occurs where there is a direct conflict between the terms of the federal and state law. *Id.*

■ Most state courts, including one of our sister courts, have held to the contrary. *See Roberts v. Roberts,* 560 S.W.2d 438, 439–40 (Tex.Civ.App.-Beaumont 1977, writ ref'd n.r.e.) (holding FEGLIA does not preempt state court's power to impose a constructive trust on the proceeds of a decedent's insurance policy after proceeds have been paid to the designated beneficiary); *see also Eonda v. Affinito,* 427 Pa.Super. 317, 629 A.2d 119, 123 (1993) (concluding that a state court-imposed constructive trust does not contravene any of the federal interests underlying FEGLIA and thus is not preempted by FEGLIA); *Kidd v. Pritzel,* 821 S.W.2d 566, 575 (Mo.Ct.App. 1991) ("We hold that the [equity] claims of the plaintiffs are not pre-empted by FEGLIA."); *McCord v. Spradling,* 830 So.2d 1188, 1203 (Miss.2002) (concluding FEGLIA does not preempt state equitable actions); *Sedarous v. Sedarous,* 285 N.J.Super. 316, 666 A.2d 1362, 1363 (1995) ("We hold that FEGLIA does not preempt the power of the state court to impose a constructive trust on the proceeds of insurance after the death of the obligor spouse."); *but see Metropolitan Life Ins. Co. v. Potter,* 533 So.2d 589, 590 (Ala.1988) (holding FEGLIA preempts equitable state law claims). We find the reasoning of these cases persuasive because there is nothing in the federal statutes, regulations, or case law preventing state courts from imposing a constructive trust on FEGLIA insurance proceeds. Therefore, we join the majority of state courts that have addressed this issue and hold that FEGLIA does not preempt the power of state courts to impose a constructive trust on FEGLIA insurance proceeds.

### FEGLIA

■ Wakako claims section 8705 of FEGLIA supports her preemption position. Section 8705 sets out precisely to whom FEGLIA insurance benefits are to be paid when a policyholder dies. This section provides:

(a) The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in [the employing office or, in some cases, the OPM]. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

Second, if there is no designated beneficiary, to the widow or widower of the employee.

Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation.

Fourth, if none of the above, to the parents of the employees or the survivor of them.

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee.

Sixth, if none of the above, to other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death.

5 U.S.C. § 8705(a). According to Wakako, Congress would not have included this provision unless it intended for section 8705 to pre-empt state law claims. We are unpersuaded by Wakako's argument because the sole purpose of section 8705 has always been to provide for the speedy and economic settlement of insurance claims. *See Kidd,* 821 S.W.2d at 569–70 (examining legislative history and the subsequent

amendments to the statute and concluding purpose of section 8705 is to provide a quick and economic settlement of insurance claims). The purpose of section 8705 is not thwarted by imposition of a constructive trust after the proceeds have been paid in accordance with the statute.

We are likewise unpersuaded by Wakako's argument that the rights conferred on her by section 8705 are rendered meaningless if she, as Aubin's designated beneficiary, is deprived of the FEGLIA insurance proceeds through equitable means. As the court noted in *Kidd v. Pritzel:*

> [Section] 8705 serves a valuable and worthwhile purpose by keeping the OPM and the insurance company out of legal entanglements. It fulfills the congressional intention by reducing their administrative and legal hassles. Regardless of what claims are brought to recover the proceeds once they are paid out to the designated beneficiary, the purpose of § 8705 has been served. Neither the insurance carrier nor the government can be burdened by participation in a state judicial proceeding to recover the proceeds. Nor will they be saddled with the unpleasant and cumbersome task of interpreting state statutes, divorce decrees, property settlement agreements or wills. Under § 8705 the insurer may simply pay the policy proceeds quickly and directly to the named beneficiary and be done with it. If the insured fails to designate a beneficiary, the statute provides direction to determine the person to pay. This does not bar equitable claims and equitable claims do not render § 8705 meaningless.

*Id.* at 572 (citations omitted).

Another FEGLIA provision Wakako cites in favor of her preemption contention is section 8709(d). Section 8709(d) provides:

> The provisions of any contract under [FEGLIA] which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

5 U.S.C. § 8709(d)(1). Wakako claims this section expressly precludes state imposition of a constructive trust on FEGLIA proceeds after their payment to a named beneficiary.

■ Once again, we are unpersuaded by Wakako's contention. The text of section 8709 reveals that it is only concerned with conflicts between state regulation of group life insurance programs and the express contractual provisions contained in FEGLIA policies. *Kidd,* 821 S.W.2d at 572–73. Nothing in the text of section 8709 suggests that it is concerned with state law claims brought once the proceeds of a FEGLIA policy are paid out. *Id.* The case at bar relates to the invocation of a constructive trust to remedy a failure to comply with the terms of a state court divorce decree. None of the issues in this case specifically involves state laws or regulations concerning "group life insurance." *See Sedarous,* 666 A.2d at 1366; *Kidd,* 821 S.W.2d at 572–73. Because Wakako has misinterpreted the scope of section 8709(d), we reject her contention that this section expressly precludes state imposition of a constructive trust in this instance.

■ Wakako also refers to 5 C.F.R. section 870.802(f), formerly 5 C.F.R. section 870.902(e), in support of her preemption contention. This regulation provides that a change in beneficiary may be made at any time without the knowledge or consent

of the previous beneficiary and this right cannot be waived or restricted. 5 C.F.R. § 870.802(f). Section 870.802(f) was promulgated to compliment section 8705. *Kidd,* 821 S.W.2d at 573. We therefore read section 870.802(f) "in harmony with the purpose of FEGLIA and with state law claims brought by parties rightfully entitled to a FEGLIA policy's proceeds." *Id.* While section 870.802(f) compliments the Congressional intent of section 8705 (to alleviate administrative hassles and expedite the payment of claims), it does not pre-empt equitable state law claims. *Id.*

Lastly, Wakako claims the Supreme Court's decision in *Ridgway v. Ridgway,* supports the conclusion that FEGLIA preempts all state laws and equitable remedies. 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981). In *Ridgway,* the Supreme Court considered the preemptive effect of the Serviceman's Group Life Insurance Act ("SGLIA"). *Id.* at 50, 102 S.Ct. 49. There, as part of the parties' divorce decree, the husband was ordered to maintain life insurance policies on his life for the benefit of his children. *Id.* at 48, 102 S.Ct. 49. One of the policies the husband was to maintain was a SGLIA policy, which designated his ex-wife as beneficiary. *Id.* Less than four months after the parties' divorce, the husband remarried and changed his SGLIA policy's beneficiary to one directing that its proceeds be paid in accordance with SGLIA's order of precedence, which required the policy proceeds be paid to the husband's widow at the time of his death. *Id.* at 48–49, 102 S.Ct. 49.

After the husband died, the husband's widow and ex-wife filed claims for the SGLIA proceeds. *Id.* at 49, 102 S.Ct. 49. The ex-wife based her claim on the divorce decree while the widow's claim rested on the SGLIA beneficiary designation and her status as the husband's widow. *Id.* The

ex-wife subsequently filed suit to recover the SGLIA proceeds. *Id.* The lower court rejected the ex-wife's argument that the court should impose a constructive trust, for the children's benefit, on any policy proceeds paid to the widow. *Id.* The appellate court later reversed the lower court's decision and remanded the cause to the lower court to impose a constructive trust on the SGLIA policy proceeds. *Id.* at 50, 102 S.Ct. 49. The United States Supreme Court reversed the appellate court's decision. *Id.* at 63, 102 S.Ct. 49.

*Ridgway* was decided on two points. First, the court determined that the order of precedence included in SGLIA for the payment of benefits and the underlying regulations conferred a right on the husband to designate his policy beneficiary. *Id.* at 55–57, 102 S.Ct. 49. Second, and most importantly, the Supreme Court determined that the imposition of a constructive trust upon the husband's insurance proceeds was inconsistent with SGLIA's anti-attachment provision, which provided that SGLIA policy proceeds were exempt from creditors and "any 'attachment, levy, or seizure by or under any legal or equitable process whatever,' whether accomplished 'either before or after receipt by the beneficiary.'" *Id.* at 60–61, 102 S.Ct. 49. The court stated that any division of the husband's SGLIA policy proceeds by way of a court-imposed constructive trust would operate as a forbidden "seizure" of those proceeds. *Id.* at 60, 102 S.Ct. 49. Thus, based on the "strong language of the anti-attachment provision" contained in SGLIA, the Court concluded Congress did not intend to exempt claims arising from property settlement agreements. *Id.* at 61, 102 S.Ct. 49.

While the facts of *Ridgway* appear similar to those in the case at bar, we do not believe this case controls the preemption question with respect to FEGLIA because

SGLIA and FEGLIA are not cognate enactments. *Sedarous,* 666 A.2d at 1365. First, FEGLIA is not attended by the exigency that motivated SGLIA. *Id.* Congress enacted SGLIA to provide military personnel in combat zones during the Vietnam war with life insurance coverage unavailable to them in the private market. *Eonda,* 629 A.2d at 121. By contrast, when FEGLIA was first presented, President Eisenhower stated that the act had two main purposes: (1) it allowed federal employees to " 'carry out their responsibilities to their families' "; and (2) "it made available group life insurance, which was an 'essential element in the development of a comprehensive personnel program that applies to Government service the best practices of progressive, private employers.' " *Kidd,* 821 S.W.2d at 568.

Second, SGLIA includes an anti-attachment provision while FEGLIA does not. *Eonda,* 629 A.2d at 122. Although there are many similar provisions in FEGLIA and SGLIA, the omission of an anti-attachment clause supports a conclusion that nothing in FEGLIA dictates the preemption of state law. *Kidd,* 821 S.W.2d at 571.

> If Congress had desired to totally preempt all state law claims it would have included an anti-attachment provision to FEGLIA. *Ridgway* expressly stated that if Congress chose to avoid the result in that case, it could do so by enacting legislation which did not include an anti-attachment provision. That is precisely what Congress did when it enacted FEGLIA.

*Id.* (citations omitted). Consequently, we are not persuaded that *Ridgway* requires a preemption result in this case.

The Supreme Court has consistently recognized that " 'the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.' " *Rose v. Rose,* 481 U.S. 619, 625, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987). "There is a higher standard for the establishment of federal pre-emption in the area of domestic relations." *Kidd,* 821 S.W.2d at 571. The state law " 'must do "major-damage" to "clear and substantial" federal interests' " for the state law governing domestic relations to be overridden. *Rose,* 481 U.S. at 625, 107 S.Ct. 2029. In light of the foregoing, we cannot say that federal law precludes the courts of this state from imposing a constructive trust on Aubin's FEGLIA insurance proceeds. Wakako's first issue is therefore overruled.

### FEDERAL EMPLOYEES' RETIREMENT SYSTEM LUMP SUM DEATH BENEFIT & SURVIVORSHIP ANNUITY

In her second issue, Wakako claims the trial court lacked subject matter jurisdiction to enforce the divorce decree with respect to Aubin's lump sum death benefit and survivorship annuity because Congress granted the OPM exclusive authority over these benefits.[7] While Congress charged the OPM with making the benefits determinations concerning federal civilian employees, *see* 5 U.S.C. § 8461(d), it also mandated that the OPM avoid resolving disagreements between parties concerning the validity or the provisions of court orders. 5 C.F.R. § 838.101(a). Congress provided that jurisdiction over such disagreements rests with the courts.[8]

---

7. Final decisions of the OPM are appealable to the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 8461(e)(1). Appeal from the final decisions of the MSPB is to the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703; 28 U.S.C. § 1295(a)(9).

8. *Id.* Section 838.101(a) provides:

Here, the underlying proceeding arises from a disagreement concerning the provisions of Aubin and Yoshiko's divorce decree. As stated in section 838.101(a), the OPM "performs purely ministerial actions" and any "[d]isagreement ... concerning the validity or the provisions of any court order must be resolved by the court." *See id.* § 838.101(a)(2). Because section 838.101(a) expressly authorizes state courts to resolve disagreements like the one in question, we cannot say the trial court lacked subject matter jurisdiction in this instance. *See id.* Wakako's second issue is therefore overruled.

■ In her third issue, Wakako argues that even if the court had subject matter jurisdiction, she is entitled to the entire lump sum death benefit and survivorship annuity under federal law. However, we need not reach the merits of Wakako's contention because the issue of whether Wakako is entitled to 100% of these benefits under federal law was not an issue before the trial court; the trial court was limited to addressing the disagreement concerning the validity or the provisions of the underlying divorce decree. *See id.* Consequently, Wakako's third issue is overruled.

■ Wakako claims in her fourth issue that the trial court miscalculated the value of Yoshiko's share of Aubin's lump sum death benefit. Wakako claims the trial court erroneously based Yoshiko's share on a death benefit of $67,707.97, when it should have based it on a death benefit value of only $44,925.30. According to Wakako, had the trial court relied on the actual value of Aubin's lump sum death benefit, it would have awarded Yoshiko $26,691.33 instead of $40,227.20.

We are unpersuaded by Wakako's argument because it fails to take into consideration the trial court's finding that the parties were entitled to interest on the original value of Aubin's lump sum death benefit. With interest, the trial court calculated Aubin's death benefit to be worth $67, 707.97. Because the parties were entitled to interest on Aubin's death benefit, we cannot say the trial court miscalculated the value of Yoshiko's share of Aubin's lump sum death benefit. Wakako's fourth issue is overruled.

### ATTORNEY'S FEES

■ In her final issue, Wakako contends the trial court had no legal basis to award Yoshiko attorney's fees. Section 9.014 of the Texas Family Code, however, authorizes a trial court to award reasonable attorney's fees in a proceeding to enforce a property division under a divorce decree. TEX. FAM.CODE ANN. § 9.014 (Vernon 1998). Here, Yoshiko's amended peti-

(1) This part regulates the Office of Personnel Management's handling of court orders affecting the Civil Service Retirement System (CSRS) or the Federal Employees Retirement System (FERS), both of which are administered by the Office of Personnel Management (OPM). Generally, OPM must comply with court orders, decrees, or court-approved property settlement agreements in connection with divorces, annulments of marriage, or legal separations of employees, Members, or retirees that award a portion of the former employee's or Member's retirement benefits or a survivor annuity to a former spouse.

(2) In executing court orders under this part, OPM must honor the clear instructions of the court. Instructions must be specific and unambiguous. OPM will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws. In carrying out the court's instructions, OPM performs purely ministerial actions in accordance with these regulations. Disagreement between the parties concerning the validity or the provisions of any court order must be resolved by the court.

5 C.F.R. § 838.101(a).

tion in her Bexar County proceeding against Wakako, Aubin's Estate, and the OPM specifically sought to enforce the final divorce decree entered by the Comal County Court at Law on June 19, 2003. Thus, because Yoshiko's suit sought to enforce a property division under a divorce decree, the trial court had a legal basis to award Yoshiko attorney's fees under Chapter 9 of the Family Code.

Wakako further argues that Yoshiko is not entitled to attorney's fees under section 9.014 of the Family Code because the suit to enforce the divorce decree was not filed in the Comal County Court at Law, the court which entered Yoshiko and Aubin's final divorce decree. *See id.* §§ 9.001–.002 (Vernon 1998). According to Wakako, a party affected by a decree of divorce providing for a division of property may recover attorney's fees in an enforcement suit only if she files suit in the same court that rendered the divorce decree. We find nothing in Chapter 9 of the Family Code to support this proposition. *See id.* § 9.001, *et. seq.* Absent authority indicating that the court rendering the divorce decree is the only court that can award attorney's fees in an enforcement action, we must overrule Wakako's fifth issue.

### CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.